## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **FAMILY MEDICINE PHARMACY, LLC, on behalf of itself and other persons similarly situated,** ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | Case No. 1:20-cv-00534--KD-B |
| **LIFESCAN, INC.,** ) ) | Hon. Kristi K. DuBose |
| **Defendant.** ) ) ) | |

### PLAINTIFFS' *UNOPPOSED* AMENDED MOTION & MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Dated:  August 3, 2021

The McFerrin Law Firm, LLC
James H. McFerrin
3117 Manitou Lane
Birmingham, AL 35216
Tel: (205) 637-7111
Fax: (205) 637-7212

Johnstone Carroll, LLC
Matthew F. Carroll
2204 Lakeshore Drive, Suite 303
Homewood, AL 35209
Tel: (205) 783-1577
Fax: (888) 759-3882

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………..……...ii-iii

TABLE OF AUTHORITIES ………………………………………………..……...iv-vii

I.   INTRODUCTION ……………………………………………………..……..1

II.  BACKGROUND …………………………………………………………..……2

    A.   Family Medicine's Allegations Regarding Lifescan ………………………...……2

    B.   The Settlement Discussions …………………………………………...……...3

III. THE PROPOSED SETTLEMENT …………………………………..……...4

    A.   The Settlement Class …………………………………………………..…….4

    B.   The Relief Provided …………………………………………………..……….5

    C.   Notice and Settlement Administration ………………………………….…….5

    D.   Opt-Out and Objection Procedure …………………………………….…….6

    E.   Attorney's Fees and Costs ……………………………………………..…….7

    F.   Release …………………………………………………………………….7

IV.  THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ………………7

    A.   The Court Would Likely Find that the Proposed Settlement Is Fair, Reasonable, and
        Adequate …………………………………………………………………9

        1.   The Settlement was reached after extensive discovery, litigation, and arm's
            length negotiation …………………………………………………9

        2.   The relief provided by the Settlement is more than adequate and provides equal
            relief to all Class Members ……………………………………………..…...10

    B.   The Court Would Likely Find that the Proposed Settlement Meets All the Requirements
        for Certification for Purposes of Settlement Under Federal Rule 23 ……………………14

        1.   The Proposed Settlement Class meets all perquisites to certification under
            Federal Rule 23(a) ………………………………………………..……14

            i.   The Proposed Settlement Class is Ascertainable based on objective
                criteria …………………………………………………………..…...15

            ii.  Numerosity ……………………………………………..…….15

            iii. Commonality …………………………………………...………16

            iv.  Typicality ……………………………………………………17

            v.   Adequacy ……………………………………………..……….18

        2.   The Proposed Settlement Class Is Certifiable Under Federal Rule 23(b)(3)……..19

            i.   Common questions predominate within the Settlement Class ………….20

            ii.  A class action is superior to any alternative means of adjudicating

|   | | Settlement Class Members' claims ............................................................21 |
| iii. | | The proposed Notice Plan satisfies Due Process and the Requirements of Federal Rule 23...........................................................22 |
| iv. | | Plaintiffs' Counsel Should Be Appointed Class Counsel........................24 |
| V. | CONCLUSION | ........................................................................................................24 |

## **TABLE OF AUTHORITIES**

### **Cases**

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997)...........................................................................20, 21

*Appleyard v. Wallace,*
    754 F.2d 955 (11th Cir. 1985) ..................................................................19

*Bennett v. Behring Corp.,*
    737 F.2d 982 (11th Cir. 1984)....................................................................9

*Bobo's Drugs v. Total Pharmacy Supply, Inc.,*
    C.A. No. 17-cv-2553..............................................................................14

*Bussey v. Macon County Greyhound Park, Inc.,*
    562 Fed. Appx. 782 (11th Cir. 2014)...........................................................15

*Calderone v. Scott,*
    838 F.3d 1101 (11th Cir. 2016) ................................................................16

*Carriuolo v. General Motors Co.,*
    823 F.3d 977 (11th Cir. 2016) ..................................................................16

*Cherry v. Dometic Corp.,*
    986 F.3d 1296 (11th Cir. 2021)................................................................15

*CMart, Inc. v. Metro. Life Ins. Co.,*
    299 F.R.D. 679 (S.D. Fla. 2014).............................................................20, 22

*Cox v. American Cast Iron Pipe Co.,*
    784 F.2d 1546 (11th Cir. 1986) ................................................................16

*Dalton v. Cardworks Servicing, LLC,*
    No. 09-cv-00563, 2010 WL 5341939 (S.D. Ala. 2010)........................................8

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974)..............................................................................22

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    563 U.S. 804 (2011)..............................................................................20

*Family Medicine Pharmacy, LLC v. Perfumania Holdings, LLC,*
    No. 15-cv-0563, 2016 WL 7320885 (S.D. Ala. 2016) .......................................13

*Family Med. Pharmacy, LLC v. Trxade Grp., Inc.,*
    No. 15-cv-0590, 2016 WL 6573981 (S.D. Ala. 2016)...............................8, 16, 21

*Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*,
   No. 15-cv-0590, 2017 WL 1042079 (S.D. Ala. 2017) ...........................................................15

*Family Med. Pharmacy, LLC v. Impax Laboratories, Inc.*,
   No. 17-cv-0053, 2017 WL 4366740 (S.D. Ala. 2017)………………………………....14, 15

*Florida Trailer and Equip. Co. v. Deal*,
   284 F.2d 567 (5th Cir. 1960) ...............................................................................................12

*Gen. Tel Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)..............................................................................................................22

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
   No. 18-cv-20048, 2019 WL 2249941 (S.D. Fla. 2019) ...................................................12, 20

*Guarisma v. ADCAHB Med. Coverages, Inc.*,
   No. 13-cv-21016, 2015 WL 13650934 (S.D. Fla. 2015) .......................................................17

*In re CP Ships Ltd. Sec. Litig.*,
   578 F.3d 1306 (11th Cir. 2009) .............................................................................................9

*Ira Holtzman, C.P.A. v. Turza*,
   728 F.3d 682 (7th Cir. 2013) ................................................................................................17

*Jackson v. Motel 6 Multipurpose, Inc.*,
   130 F.3d 999 (11th Cir. 1997) ..............................................................................................20

*James v. JPMorgan Chase Bank, N.A.*,
   No. 15-cv-2424, 2017 WL 2472499 (M.D. Fla. 2017)...........................................................12

*Jenkins v. Raymark Indus., Inc.*,
   782 F.2d 468 (5th Cir. 1986) ................................................................................................16

*Karhu v. Vital Pharmaceuticals, Inc.*,
   621 Fed.Appx. 945 (11th Cir. 2015)......................................................................................15

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ............................................................................................20

*Knutson v. Schwan's Home Serv., Inc.*,
   No. 12-cv-0964, 2013 WL 4774763 (S.D. Cal. 2013) ..........................................................22

*Markos v. Wells Fargo Bank, N.A.*,
   No. 15-cv-01156, 2017 WL 416425 (N.D. Ga. 2017)............................................................13

*Murray v. Auslander,*
  244 F.3d 807 (11th Cir. 2001) ...................................................................... 18

*O'Toole v. Pitney Bowes, Inc.,*
  No. 08-cv-01645, 2009 WL 10672311 (N.D. Ga. 2009).........................…..14, 20

*Ressler v. Jacobson,*
  822 F. Supp. 1551 (M.D. Fla. 1992)............................................................... 12

*Schwyhart v. AmSher Collection Servs., Inc.,*
  No. 15-cv-01175, 2017 WL 1034201 (N.D. Ala. 2017)....................................12, 20

*Smith v. William Wrigley Jr. Co.,*
  No. 09-cv-60646, 2010 WL 2401149 (S.D. Fla. June 15, 2010)............................ 8

*Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,*
  350 F.3d 1181 (11th Cir. 2003) ................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)...................................................................................... 16

*Williams v. Bluestein Brands, Inc.,*
  No. 17-cv-1971, 2019 WL 1450090 (M.D. Fla. 2019)…………………………………….20

*Williams v. Mohawk Industries, Inc.,*
  568 F.3d 1350 (11th Cir. 2009) .................................................................... 18

*Wright v. Circuit City Stores, Inc.,*
  201 F.R.D. 526 (N.D. Ala. 2001) ................................................................... 18

## **Statutes**

47 U.S.C. § 227.............................................................................................*passim*

FED. R. CIV. P. 23 ........................................................................................*passim*

## **Other Sources**

Alba Conte & Herbert B. Newberg, 2 Newberg on Class Actions § 11.41 (4th ed. 2002)............8

Manual for Complex Litigation § 21.632 (4th ed. 2004)……………………………………...8

## I.   **INTRODUCTION**

Plaintiff Family Medicine Pharmacy, LLC ("Plaintiff" or "Family Medicine") respectfully submits this Amended Motion for Preliminary Approval of its proposed class action settlement with Defendant Lifescan, Inc. ("Lifescan"). This amended motion enhances the terms and notice provisions of the proposed settlement as follows:

(1)   Eliminates and withdraws any potential request for an incentive award for the class representative;

(2)   Substantially enhances the fax notice to potential class members by including the case style and additional language to conspicuously inform recipients that this is a settlement of a pending lawsuit in which they have a claim and not a solicitation;

(3)   Simplifies the claims process for potential class members by including the claim form with the fax notice; and,

(4)   Provides for a second notice by post card to all potential class members for whom the claims administrator or LifeScan has and/or can reasonably obtain mailing addresses, also providing conspicuous notice advising recipients of their right to make a claim as part of this settlement.

With these changes, Plaintiff Family Medicine Pharmacy, LLC believes that its agreement with Lifescan provides a fair, reasonable, and expeditious settlement of the proposed class's Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") claims against Lifescan.

Plaintiff renews its request for certification of their proposed settlement class for purposes of settlement under Federal Rules 23(a) and (b)(3), and preliminary approval of the Settlement Agreement, claims procedure, and the proposed form and method of class notice, as amended. While Plaintiff maintains that even absent a settlement they would be able to secure class certification and prevail on the merits at trial, success is not assured, and Lifescan has and will vigorously defend this matter. If approved, the settlement would bring meaningful relief to consumers as well as certainty and closure to what would be highly contentious and costly

1

litigation.

As explained in detail below, the settlement is consistent with or better than other TCPA settlements that have been approved in this District and in other courts throughout the country. Certification of the settlement class is in the best interest of the putative class members and satisfies the requirements for certification of a settlement class under Federal Rule 23. Accordingly, Plaintiff respectfully requests that the Court enter an order that (i) grants preliminary approval to the Settlement; (ii) appoints Plaintiff as Class Representative of the proposed Settlement Class; (iii) approves the proposed Notice Plan; (iv) appoints the McFerrin Law Firm, LLC and Johnstone Carroll, LLC, as Class Counsel; and (v) schedules a final approval hearing to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and whether the Settlement Class should be certified.

## II.    **BACKGROUND**

### A.    **Family Medicine Pharmacy's Allegations Regarding Lifesan, Inc.**

Family Medicine is a family-owned pharmacy located Clarke County, Alabama. Dkt. No. 1, ¶ 1. On November 10, 2020, Family Medicine filed its Class Action Complaint against Lifescan in the United States District Court for the Southern District of Alabama ("Southern District of Alabama"). Dkt. No. 1. Family Medicine alleges that Lifescan sent unsolicited facsimile advertisements for its "One-Touch Verio" brand glucose monitoring system to Plaintiff and other class members. Dkt. No. 1, ¶¶ 12-13. Family Medicine alleges that Lifescan sent those faxes without an established business relationship with the recipients and without the opt-out notice required by 47 U.S.C. §227(b)(1)(C)(i) and (iii). Dkt. No. 1, ¶¶ 12-13.

On January 15, 2021, Lifescan answered Family Medicine's Complaint. Dkt. No. 3. Shortly thereafter, the parties began discussing the scope of the discovery that would be needed

2

to prepare this case for trial. As part of those discussions, Lifescan acknowledged sending approximately 4,333 similar faxes to approximately 3,150 unique fax numbers. Lifescan asserted that it had an established business relationship with the recipients. It also asserted that the faxes were informational rather than advertisements.

## B.   Settlement Discussions

Contemporaneous with their discovery planning, the Parties initiated discussions regarding possible settlement. The Parties' initial telephone discussions regarding settlement were unsuccessful. The parties, however, concluded that an early mediation might be fruitful.

On March 4, 2021, the Parties participated in a full-day mediation before Bruce Rogers, a well-respected mediator with the firm of Bainbridge, Mims, Rogers, and Smith, LLC, in Birmingham. While the parties made some progress during the course of the mediation, the session was ultimately unsuccessful.

Over the next several days, the Parties continued negotiations with the assistance of the mediator. These negotiations involved numerous conversations among the parties and multiple follow-up calls with the mediator, Mr. Rogers. On March 15, 2021, the Parties executed a term sheet outlining the essential terms of the proposed settlement. Over the next six weeks, the Parties worked diligently and reduced these general terms to a final settlement agreement. . These negotiations involved multiple conversations between the Parties as well as review and preparation the agreement and proposed notices to class members.

On May 18, 2021, Family Medicine filed its motion for preliminary approval of that the proposed settlement with this Court. *See* Dkt. # 19. On July 20, 2021, the Court conducted an in-person hearing on Family Medicine's motion. The Court's review included ore tenus examination of the proposed class representative to determine adequacy to represent the class;

3

the proposed class definition to confirm it adequately identified the class members; and the notice procedures.

The Court suggested the parties discuss ways to improve the notice procedures. The Court furthered directed Family Medicine to file an amended motion for preliminary approval incorporating any proposed enhancements on or before August 3, 2021 for the Court's review.

The parties have amended the proposed settlement to include the following modifications and/or additions to that procedure: (1) the facsimile notice to be sent to class members will include case style and conspicuously advises recipients that they are receiving this notice because they may have a claim in a pending lawsuit and that it is not a solicitation, (2) the facsimile notice will also include a claim form for class members to complete and return [the settlement previously required class members to visit a website to obtain the claims form] and (3) includes a second notice by post-card to all recipients for whom the parties have or can reasonably obtain mailing addresses. As noted during the hearing, Plaintiff waives any potential class representative award. A copy of the Settlement Agreement and the First Amendment to the Settlement Agreement are attached hereto as Exhibits A and A-1.

All told, the Parties have conducted significant time investigating the claims and negotiating the terms of the Settlement Agreement, as amended, for which the Plaintiff now requests that the Court enter preliminary approval.

## III.   **THE PROPOSED SETTLEMENT**

### A.   **The Settlement Class**

The proposed Settlement would establish a Settlement Class defined as follows:

a.      Any and all individuals and entities, who or which, from November 10, 2016 to the date of preliminary approval (the "Class Period"), received one or more unsolicited advertisements via facsimile from defendant without the required opt out notice (hereinafter the "Settlement Class").

4

b.      Excluded from the Settlement Class are: Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers, and employees of that Defendant or its subsidiaries or affiliate. Also excluded from the Settlement Class is the Judge to whom this case is assigned as well as the Judge's immediate family, and any individual who opts out of the Settlement Class as described below.

Ex. A, p. 4.

### B.      The Relief Provided

The Settlement Agreement calls for Lifescan to make a total of Seven Hundred and Fifty Thousand U.S. dollars ($750,000.00) available for settlement of Approved Claims and Settlement Costs. Ex. A, p. 13. Each Settlement Class member who submits an approved claim will receive a check paying the recipient a maximum of two hundred and fifty dollars ($250.00) *for each* Lifescan facsimile it successfully received, subject to *pro rata* reduction. Ex.A, p. 16.

While the total payment to each Settlement Class Member will depend on the number of valid Claim Forms submitted, Plaintiff anticipates that each Settlement Class Member who submits a valid claim will likely receive the full $250.00 payment for each Lifescan facsimile received.  The Settlement Class Members will have 42 days from the Class Notice Date to file a claim.

### C.      Notice and Settlement Administration

The Parties have agreed to retain Kurtzman Carson Consultants ("KCC") as the Settlement Administrator. KCC will be responsible for receiving Claims submitted by Settlement Class Members, determining whether all submitted information is complete and accurate, and effectuating class notice. Ex. A, pp. 5 and 16-17 and Ex. A-1. Notice will be provided through a combination of direct fax notice, post-card notice, and a website notice. Ex. A, p. 22 and Ex. A-1.

The Parties will provide the Settlement Administrator with the Class Settlement List—

meaning the list of unique fax numbers that received one or more facsimiles from Lifescan during the Class Period and the names associated with numbers on the Class Settlement List (to the extent available). Ex. A, p. 22. The Settlement Administrator will use the Class Settlement List to send the Notice and a claim form by facsimile to all individuals for whose number is on that list. Ex. A, p. 22 and Exs. B & C [respectively, the "Short Form Notice" and "Long Form Notice"].

The Settlement Administrator shall also use the Class Settlement List to determine, or attempt to determine, the mailing addresses of each individual and/or entity appearing on that list. The Settlement Administrator shall then prepare and mail the post card notice attached as Exhibit D ["Post Card Notice"] to the identified mailing addresses of those recipients by first class U.S. mail. Ex. A-1.

In addition to the robust direct notice being provided in the Settlement Agreement, as amended, the Settlement Administrator will also establish a Settlement Website, which will contain electronic versions of the Claim Form that can be submitted online or via regular mail, as well as the full Settlement Agreement, a detailed Long Form Notice, important court documents, and answers to frequently asked questions. Ex. A, pp. 22-23. The format and language of the Short Form Notice, Post Card Notice, and Long Form Notice have been carefully drafted in straightforward, easy-to-read language to clearly inform Settlement Class Members of all the material aspects of the Settlement, such as the relief they are entitled to under the settlement, the amount of attorneys' fees that may be sought, and instructions and deadlines for opting out from, or objecting to, the Settlement. Ex. A, pp 22-23, Ex. A-1, pp. 1-3; Exs. B-D.

### D.    Opt-Out and Objection Procedure

Settlement Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. Ex. A, pp. 26-27. The procedures and deadlines for filing

opt-out requests and objections will be referenced in all forms of the notice and on the Settlement Website. *Id.*; *see also* Ex. B [Short Form Notice], C [Long Form Notice], and D [Post Card Notice]. With respect to objections, the notices inform SettlementClass Members that the Final Approval Hearing will be their opportunity to appear and have theirobjections heard. Ex. A, pp. 28-31; Exs. B [Short Form Notice], C [Long Form Notice], and D [Post Card Notice]. The notices also inform Settlement Class Members that they will be bound by the release unless they timely exercise their right to exclusion. *Id.* The Settlement Class Members will have 35 days from the Class Notice Date to Opt Out or Object.

### E.    Attorneys' Fees and Costs

Subject to Court approval, attorneys' fees are to be paid out of the Total Settlement Amount. Ex. A, p. 18. Under the Settlement Agreement, Class Counsel may request attorneys' fees and costs of no morethan thirty-three and one-third percent (33.3%) of the Settlement Fund. Ex. A, p. 18.

### F.    Release

In exchange for the monetary and prospective relief described above, each Settlement ClassMember who does not exclude himself or herself will be deemed to have released and forever discharged Lifescan and the other "Released Parties" from any Released Claims. Ex.A, pp. 33-34.

## IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The proposed settlement provides substantial relief to the Settlement Class Members and represents a fair and reasonable resolution of this dispute. It thus merits that the Court grant preliminary approval of the settlement, and permit notice to be sent to the Settlement Class Members. Rule 23 directs the Court at this stage to determine whether it "will be likely" to grant

final approval of the proposed settlement as "fair, reasonable, and adequate" pursuant to Fed. R. Civ. P. 23(e)(2), and certifiable "for purposes of judgment on the proposal" pursuant to Fed. R. Civ. P. 23(e)(1)(B)(ii). This directive matches the well-established two-step process in this Circuit of performing a "preliminary" evaluation of the fairness of the settlement to determine whether notice is to be sent out, prior to the final fairness inquiry. Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38–39 (4th Ed. 2002); *Family Med. Pharmacy, LLC v. Trxade Group, Inc.*, No. 15-cv-0590, 2016 WL 6573981, at *7 (S.D. Ala. July 5, 2016) (noting that at the preliminary approval stage, the "Court must first 'make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class"). Accordingly, the preliminary approval evaluation is not a final fairness hearing. Rather, it is an evaluation to determine whether there is reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, § 11.25, at 38–39; *Dalton v. Cardworks Servicing, LLC*, No. 09-cv-00563, 2010 WL 5341939, at *2 (S.D. Ala. Nov. 19, 2010), *report and recommendation adopted*, No. 09-cv-0563, 2010 WL 5331724 (S.D. Ala. Dec. 21, 2010). The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement based on the written submissions and informal presentation from the settling parties. *Manual for Complex Litigation,* §21.632 (4th ed. 2004). Critically, the Court need only find at the preliminary approval stage that it is "*likely*" to determine at the final approval hearing that the Settlement is "fair, reasonable, and adequate" and certifiable. Fed. R. Civ. P. 23(e)(1)(B).

Because every settlement is a compromise, courts should not reject a settlement solely because it does not provide a complete victory. Indeed, preliminary approval should be "granted unless a proposed settlement is obviously deficient." *Family Medicine Pharmacy*, 2016 WL 6573981, at *7 (citing *Smith v. William Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D.

Fla. June 15, 2010)). There is a strong judicial and public policy favoring the settlement of class action litigation, and such a settlement should be approved by the Court after inquiry into whether the settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). As explained below, the Court is "likely" to find that the settlement reached by the Parties is fair, adequate, and reasonable, such that it warrants preliminary approval and issuance of notice.

### A.   The Court Would Likely Find That The Proposed Settlement Is Fair,Reasonable, And Adequate

As the amendments to Rule 23 direct, in determining whether to grant preliminary approval of a settlement, the Court must first evaluate whether it is "likely" to make a final determination that the settlement is fair, reasonable, and adequate. The factors for determining whether a settlement is fair, reasonable, and adequate include: (1) whether the class representatives and class counsel have adequately represented the class; (2) whether the settlement was negotiated at arm's length; (3) whether the relief provided to the class is adequate when weighed against (i) the cost, risk, and delay of trial and appeal, (ii) the method by which relief will be distributed to the class, (iii) the proposed attorneys' fees award, and (iv) any agreement made in connection with the settlement; and (4) whether the Settlement treats all class members equally to one another. Fed. R.Civ. P. 23(e)(2); *see also In re CP Ships Ltd. Sec. Litig.,* 578 F.3d 1306, 1318 (11th Cir. 2009) (quoting *Bennett,* 737 F.2d at 986). Application of these factors to this case demonstrates that the proposed settlement is fair, reasonable, and adequate.

#### 1.   The settlement was reached after thorough evaluation of plaintiff and the classes' claims and arm's length negotiation.

The first two factors under the amended Rule 23(e)(2) are intended to "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed.

R. Civ. P.23(e)(2)(A) & (B) Advisory Committee's note. In determining whether these factors are satisfied,the Court may consider "the nature and amount of discovery in this or other cases, or the actualoutcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the classhad an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's note.

The Settlement Agreement is the product of intense negotiations. The Parties negotiated for six weeks before the mediation.  It took another six weeks of negotiations for the Parties to finalize the final Settlement Agreement.

The Parties' settlement negotiations were at all times conducted at arm's length and were facilitated by an experienced mediator. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

2. <u>The relief provided by the settlement is more than adequate and providesequal relief to all Class Members.</u>

The Court is also likely to find that the proposed settlement satisfies Rule 23's requirementthat the settlement provide adequate relief when weighed against the likely outcome of any trial on the merits. The Settlement Agreement provides a significant monetary benefit to the Settlement Class, as every Settlement Class Member with an approved claim is entitled to receive the same relief— a maximum of two hundred and fifty dollars per Lifescan fax received—subject to *pro rata* reduction. Lifescan hasagreed to make a total of $750,000.00 available for payment of Approved Claims and Settlement Costs. Given that the individual claims of the Settlement Class Members are statutorily limited under the TCPA, this settlement provides a significant benefit.

10

This conclusion is confirmed by the defenses that Lifescan has and/or would assert if this litigation continued, and the possibility that the Settlement Class Members would receive no benefit whatsoever in the absence of the Settlement Agreement. Because each Settlement Class Member is entitled to the same benefit from the settlement, the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(2)(D).

Although Plaintiff believes it has a good likelihood of prevailing on their TCPA claims, Lifescan has denied each of its allegations and all charges of wrongdoing or liability, and has raised several legal defenses, any of which, if successful, would result in Plaintiff and the proposed Settlement Class Members receiving no payment whatsoever. Specifically, Lifescan has made it clear it is prepared to argue, among other things, that (a) the facsimiles in question were informational and not advertisements, (b) Plaintiffs have not suffered any actual injury, (c) that Lifescan had an established business relationship with each of the recipients, and (d) that the putative class cannot be adversarially certified. *See, e.g.*, Lifescan's Answer, Dkt. No. 3.

Additionally, any trial in this matter is likely to be complex and expensive. In addition, the trial is unlikely to take place for some time, given that this action was filed in November of 2020 and is still in the early stages of litigation.

Pursuant to the Settlement Agreement, Plaintiffs and the Settlement Class Members will receive a meaningful benefit now, instead of a chance at an uncertain benefit years from now that might never materialize. In short, in the absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation that would result would be substantial. Even in the event that the litigation reached trial, evidence and witnesses from across the country would have to be assembled. Given the complexity of the issues and the amount in controversy, the losing Party would likely appeal both the decision(s) on the merits (at summary judgment

and/or trial), as well as the decision(s) on class certification. As such, the immediate relief provided to the Settlement Class under the Settlement Agreement weighs heavily in favor ofits approval compared to the inherent risk and delay of continued litigation, trial, and appeal in multiple forums. *Ressler v. Jacobson*, 822 F. Supp. 1551, 1552 (M.D. Fla. 1992) ("The law generally favors and encourages the settlement of class actions"); *see also Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960) ("[T]he very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the Congressionalinfusion of a power to compromise").

The other factors to be considered under the amended Rule 23(e)(2)(C) are also all satisfiedhere. As detailed above, the Parties have prepared an extensive Notice Plan that will ensure Settlement Class Members receive effective notice informing them about the settlement, and enable them to easily submit a Claim. *See supra* Section III.C; Fed. R. Civ. P. 23(e)(2)(C)(ii). In addition, Plaintiffs' counsel's anticipated attorneys' fees request – no more than just thirty-three percent of the Total Settlement Amount – falls well within the range of attorneys' fees awarded in similarcases, and will likely be deemed reasonable in light of the significant recovery achieved for the Settlement Class Members and the effort undertaken by Plaintiffs' Counsel in pursuing theseclaims on behalf of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(iii), *see James v. JPMorganChase Bank, N.A.*, No. 15-cv-2424, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (awardingattorneys' fees amounting to 30% of the settlement fund where class counsel "litigat[ed] a large class action" brought under the TCPA); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 18-cv-20048, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (collecting authorities and noting"district courts in the Eleventh Circuit routinely approve fee awards of one-third of the commonsettlement fund"); *Schwyhart v.*

12

*AmSher Collection Servs., Inc.*, No. 15-cv-01175, 2017 WL1034201, at *3 (N.D. Ala. Mar. 16, 2017) (finding award of attorneys' fees of "one-third of theSettlement Fund" to be "fair and reasonable" in TCPA class action); *Markos v. Wells Fargo Bank,N.A.*, No. 15-cv-01156, 2017 WL 416425, at *3 (N.D. Ga. Jan. 30, 2017) (awarding $4.9 million,or 30% of settlement fund, in TCPA class action). To the extent that any Settlement Class Membersbelieve that the requested attorneys' fees are not appropriate, they will have the opportunity tosubmit a written objection, and appear at the Final Approval Hearing.

Plaintiffs have also identified all agreements made in connection with the Settlement, which are solely limited to the terms contained in the Settlement Agreement filed herewith as Exhibit A. Fed. R. Civ. P. 23(e)(2)(C)(iv). In sum, (a) the likelihood of a lengthy, contested, and uncertain case, (b) the substantial benefit the S e t t l e m e n t Agreement provides for the Settlement Class, (c) the significant procedural andsubstantive hurdles Plaintiffs and the Settlement Class Members would face in the absence ofreaching the S e t t l e m e n t Agreement, and (d) the participation of an experienced mediator throughout thesettlement negotiation process, are all testaments to the fairness of the Settlement Agreement.

The fairness of this settlement—a total available Settlement Fund of up to $750,000 for approximately 4,333 faxes, and a maximum of $250 *per each* fax received -- is further confirmed by comparing these terms to other TCPA junk fax case settlements in this circuit. *See, e.g., Family Medicine Pharmacy v. Perfumania Holdings*, Case No. 1:15-CV-0563, 2016 WL 7320885, *5 (S.D. Ala. December 14, 2016) (approving a settlement creating fund of $463,349.50 for a settlement class of 6,500 fax recipients, while acknowledging that class members would likely receive far below the maximum $333.33 per compensable fax given the size of the fund compared to the class); *Family Medicine Pharmacy, LLC v. Impax Laboratories,*

13

*Inc.*, Case No. 1:17-CV-0053, 2017 WL 4366740 (S.D. Ala. September 29, 2017) (approving settlement fund of $4,815,700 for a settlement class of 48,157 individuals, while acknowledging that the class members were unlikely to receive the $500 maximum cap given the size of the settlement fund to the size of the class); *Bobo's Drugs v. Total Pharmacy Supply, Inc.*, C.A. No. 17-CV-2553-T-30AAS, p. 4 (M.D. Fla. November 4, 2019) (approving settlement of $275 per class member, without regard to how many faxes each class member received); *O'Toole v. Pitney Bowes, Inc.*, C.A. 1:08-CV-01645-RLV, 2009 WL 10672311 (N.D. Ga. August 3, 2009) (approving settlement that awarded each class member coupons valued at $26.00 off each $100 purchase for each week that the class member was in defendant's fax program).

Here, the Parties estimate that each SettlementClass Member who submits a valid Claim will receive up to the full amount of the $250 per facsimile successfully received. The *per facsimile* stipulation was an important consideration in this case because, with 4,333 faxes to 3,150 unique fax numbers, it means that a significant number of the class members received more than one fax. Such relief is well within the range of the TCPA settlements reviewed above. Accordingly, the proposed settlement, is likely to be fair, reasonable, and adequate, and warrants the Court's preliminary approval.

### B. The Court Would Likely Find That The Proposed Settlement Class Meets All Requirements For Certification For Purposes Of Settlement Under Federal Rule 23.

The proposed settlement is not only likely to be found fair, reasonable, and adequate, but the proposed Settlement Class is also likely to be finally certified by the Court at the Final Approval Hearing. As explained below, the Settlement Class meets all of the criteria for certification under Rule 23(a) and 23(b)(3).

1. The Proposed Settlement Class meets all prerequisites to certificationunder Federal Rule 23(a).

14

     i.  *The Proposed Settlement Class is Ascertainable based*
        *onObjective Criteria.*

  Although not explicitly required under Rule 23(a), the 11th Circuit has indicated that a proposed class be ascertainable. *See Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021); *see also Family Med. Pharmacy, LLC v. Impax Laboratories, Inc.*, No. 17-cv-0053,2017 WL 4366740, at *2 (S.D. Ala. 2017). "In order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified." *Karhu v. Vital Pharmaceuticals, Inc.*, 621 Fed. Appx. 945, 947 (11th Cir. 2015). "Administrative feasibilitymeans that identifying class members is a manageable process that does not require much, if any,individual inquiry." *Bussey v. Macon County Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11thCir. 2014).

  Here, the proposed Settlement Class Members are readily ascertainable using the Class Settlement List.  Ex. A, pp. 4, 7. The Class Settlement List contains the unique facsimile telephone numbers that received one or more faxes from Lifescan during the Class Period.  *Id.* Using this list, the Settlement Administrator will be able to identify each entity that received one or more faxes from Lifescan and send them direct notice.

  Because membership in the proposed Settlement Class is easily determined based on objective criteriaand records that have already been produced and are readily accessible, the proposed Settlement Class is ascertainable. *See Family Med. Pharmacy, LLC v. Trxade Grp., Inc.*, No. 15-cv-0590, 2017 WL 1042079, at *4 (S.D. Ala. Mar. 17, 2017) (granting final approval and finding that the proposed class was ascertainable where the defendant provided a list of phone numbers that received the unauthorized messages at issue and accompanying contact information).

     ii.  *Numerosity.*

The numerosity requirement of Rule 23(a)(1) is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 1553 (11th Cir.1986) (stating that a class of "more than forty" class members is "adequate"). Based on the Class Settlement List and estimates provided by the Settlement Administrator, it is likely that direct notice will be sent to approximately three thousand, one hundred and fifty (3,150) individuals or entities. The Settlement Class is therefore sufficiently numerous. *See Family Med. Pharmacy*, 2016 WL 6573981, at *4 (finding that a class of "8,500 persons" was sufficient to satisfy numerosity). The estimated number of Settlement Class Members, coupled with the fact that they are geographically disbursed throughout the country, renders joinder impracticable and supports a finding of numerosity.

### iii.      Commonality.

The second prerequisite of Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is met where the putative class members share a "common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The threshold for commonality, however, is not high. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). For purposes of satisfying the commonality requirement, "even a single common question will do." *Carriuolo v. General Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016).

Other TCPA class actions where the class members' claims arose under the TCPA and focused on the same course of conduct by a common defendant have been found to have common legal and factual issues. *See, e.g.*, *Family Med. Pharmacy*, 2016 WL 6573981, at *4

16

(preliminarily approving TCPA class action settlement and finding that commonality was satisfied because "the class members have suffered the same injury"); *Guarisma v. ADCAHB Med. Coverages, Inc.*, No.13-cv-21016, 2015 WL 13650934, at *2 (S.D. Fla. June 24, 2015) (finding commonality was satisfied for settlement purposes for class defined as "[a]ll persons to whom [the defendant] made or initiated . . . a telephone call marketing Florida Blue products or services from March 21, 2009 through March 2, 2015"); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (finding that class certification of TCPA claims is "normal" because the main questions in such cases are "common to all class members").

Similarly, the Settlement Class Members share a common statutory TCPA claim arising out of the same standardized conduct: that they allegedly received facsimiles that constitute advertisements on their fax machines from Lifescan without an established business relationship and/or without the statutorily required opt-out notice. Proving a TCPA violation would require the resolution of the same central factual and legal issues, including: whether the Settlement Class Members' received facsimiles on their fax machines; whether such faxes were sent to recipients without an established business relationship; whether Lifescan's faxes had the required opt-out notice; and, whether such conduct violated the TCPA. In addition, the facsimiles at issue were allegedly made to the Settlement Class Members in the same manner, and thus would entitle the Settlement Class Members to the same statutory damages, on a per fax basis, under the TCPA. Therefore, the sheer number and significance of the common questions that exist for the proposed Settlement Class Members are sufficient to meet the commonality requirement.

### iv.      Typicality.

The typicality prong of Rule 23(a)(3) requires that the class representative's claims be typical of the class members' claims. Fed. R. Civ. P. 23(a)(3). For a plaintiff to meet Rule 23(a)'s

requirement of typicality, "the claims or defenses of the class and the class representative[shall] arise from the same event or pattern or practice and [be] based on the same legal theory." *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009). "The typicality requirement may be satisfied despite substantial factual differences . . . when there is a strong similarity of legal theories." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001); *see also Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 543 (N.D. Ala. 2001) ("particular factual differences, differences in the amount of damages claimed or even the availability of certain defenses against a class representative may not render his or her claims atypical") (citations omitted).

Family Medicine alleges that it received a facsimile from Lifescan, and that it did not have an established business relationship with Lifescan, that the facimile did not have the statutorily required opt-out notice, and that these facsimiles violated the TCPA. Plaintiff proffers that the claims of the Settlement Class Members would be based on the same allegations. Further, Plaintiff and the putative Settlement Class Members have all suffered the same injury: a violation of their rights under the TCPA. As a result, Plaintiff and the proposed Settlement Class are entitled to identical statutory damages under the TCPA. Because the Settlement Class Members assert identical claims that are based on the same legal theory, the same facts, and the same course of conduct by Lifescan, and seek redress for thesame injury, Plaintiff is typical of the Settlement Class it seeks to represent.

> v.   *Adequacy.*

The final subsection of Rule 23(a) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfiedwhere "the named Plaintiffs have [no] interests antagonistic to those of the rest of the class" and "Plaintiff's' counsel are qualified, experienced and generally able to conduct the

proposed litigation." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). This "adequacy of representation analysis encompasses two separate inquiries (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Here, Plaintiff's interests are representative of and consistent with the interests of the proposed Settlement Class Members—all have received allegedly unlawful facsimiles from Lifescan, and all seek relief under the TCPA. Plaintiff's pursuit of this matter as well as representing the Settlement Class Members' interests throughout the settlement process, demonstrates that it has been and will remain zealous advocates for the Settlement Class. Plaintiff has no interests that are antagonistic to the interests of the putative Settlement Class Members; rather, their primary interest is the same, namely, to obtain relief pursuant to the TCPA.

Plaintiff is also represented by experienced, competent counsel. Proposed Class Counsel have regularly engaged in complex class litigation and have extensive experience in consumer class action lawsuits involving the TCPA and, in particular, unlawful facsimiles. *See* Declaration of James H. McFerrin, attached hereto as Exhibit E ("McFerrin Dec."), at ¶¶ 10-11; Declaration of Matthew F. Carroll, attached hereto as Exhibit F ("Carroll Dec."), ¶¶ 10-11. Plaintiffs' counsel has been appointed as class counsel in multiple complex class actions, including TCPA cases such as the one before the Court here. Ex. E [McFerrin Dec.]. As such, proposed Class Counsel are qualified to assess the fairness and reasonableness of the Settlement Agreement reached in this case.

2.      The Proposed Settlement Class Is Certifiable Under Federal Rule 23(b)(3).

A class is certifiable under Rule 23(b)(3) where "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R. Civ. P. 23(b)(3). The Settlement Class before the Court here satisfies both of these requirements.

    *i. Common questions predominate within the Settlement Class.*

The predominance inquiry focuses on whether a proposed class is sufficiently cohesive towarrant adjudication by representation. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997);*Williams v. Bluestein Brands, Inc.*, No. 17-cv-1971, 2019 WL 1450090, at *4 (M.D. Fla. 2019) ("[c]ommon issues of fact and law predominate if they 'ha[ve]a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . monetary relief'") (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254–55 (11thCir. 2004)). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (internal quotation marks omitted). In TCPA cases, the predominance requirement is generally met where, as here, the class members' claims focus on a specific faxing operation by a particular defendant. *See, e.g., Gonzalez v. TCR Sports Broadcasting Holding, LLP*, No. 18-cv-20048, 2019 WL 2249941, at *2 (S.D. Fla. May 24, 2019) (granting finalapproval of TCPA class action settlement and finding predominance satisfied where individuals received "one or more text messages sent by or on behalf of Defendant . . . on a cellular phone");*Schwyhart v. AmSher Collection Servs., Inc.*, No. 15-cv-01175, 2017 WL 1034201, at *1 (N.D. Ala. Mar. 16, 2017); *O'Toole v. Pitney Bowes, Inc.*, No. 08-cv-01645, 2009 WL 10672311, at *1 (N.D. Ga. Aug. 3, 2009); *CMart, Inc. v. Metro. Life Ins. Co.,* 299 F.R.D. 679, 691 (S.D. Fla. 2014) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 f.3d 999, 1005 (11th Cir. 1997).

In this case, as in those cited above, common questions predominate because all of the Settlement Class Members received the same or similar unsolicited facsimiles from Lifescan, and Plaintiff alleges this was done without the statutorily required opt-out notice and without an established business relationship. In other words, all of the Settlement Class Members were allegedly sent the same or similar faxes, under similar circumstances, by the same entity. As such, the elements of any given Settlement Class Member's claim will be based on the same class-wide proof applicable to other Settlement Class Members within the same class.

> ii.   *A class action is superior to any alternative means of adjudicating Settlement Class Members' claims.*

A class action is also superior to any other method available to fairly and efficiently adjudicate the Settlement Class Members' claims. A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

Here, because all of the Settlement Class members claims involve the same course of conduct by Lifescan, and are subject to resolution based on the determination of the same common legal and factual issues, it would also be most efficient for their claims to be adjudicated on a class basis. Nor is there any concern regarding the "difficulties in managing a class action" since "[t]he proposed settlement negates any potential problems for managing a class action." *Family Med. Pharmacy*, 2016 WL 6573981, at *7 (citing *Amchem*, 521 U.S. at 620) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[]").

Importantly, many putative Settlement Class Members may not have access to competent counsel willing to invest the time and resources necessary to prosecute their claims.

Because the Settlement Class Members have little incentive to bring individual actions to recover "therelatively minimal amount of damages" available under the TCPA, they are unlikely to have an interest in individually controlling the prosecution of separate actions. *See Knutson v. Schwan's Home Serv., Inc.*, No. 12-cv-0964, 2013 WL 4774763, at *10 (S.D. Cal. Sept. 5, 2013) ("Given the relatively minimal amount of damages that an individual may recover in suing for violation ofthe TCPA, the Court finds a class action would achieve Plaintiffs' objective better than if class members were required to bring individual actions"). It is therefore unlikely that, absent a class action, many individuals would be able to obtain relief through individual lawsuits. As such, adjudicating the Settlement Class Members' claims in a single proceeding will "save[] the resources of both the courts and the parties by permitting an issue potentially affecting every classmember to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. of Southwest. v. Falcon*, 457 U.S. 147, 155 (1982); *see also CMart*, 299 F.R.D. at 691 ("the large number of claims, along withthe relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating the plaintiffs' claims under TCPA").

      *iii.*       *The proposed Notice Plan satisfies Due Process and therequirements of Federal Rule 23.*

When a class is certified through settlement, Due Process and Rule 23 require that the court"direct notice in a reasonable manner to all class members who would be bound by the proposal."Fed. R. Civ. P. 23(e) (1). Where, as here, a class is certified pursuant to Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173

(1974) ("[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"). The notice must contain information in plain, easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

As discussed above, the Parties have agreed to a comprehensive Notice Plan that more thansatisfies the requirements of Due Process and Rule 23. The Settlement Agreement provides for a direct notice plan designed to effectively reach as many Settlement Class Members as possible. The Settlement Administrator estimates that the Notice Plan will achieve a direct contact rate of in excess of ninety percent (90%) of potential Settlement Class Members. *See* Ex. G [Supplemental Declaration of Christie Pham], at ¶ 10. Under the Notice Plan, the Settlement Administrator will send *direct* notice of the Settlement via facsimile and post card to Settlement ClassMembers who will be identified using Lifescan's Class Settlement List. The Facsimile Notice will include conspicuous language informing recipients that they are receiving this facsimile pursuant to a potential class settlement and include a claim form recipients can fill out and return without having to take further action. The Post Card notice will contain similar conspicuous language to advise class members of their rights. Additionally, the Settlement Administrator will establish a website containing relevant court documents, notices, and another copy of the Claim Form, and which will provide for online submission of claims. In accordance with Rule 23(e)(4), the notices will all inform Settlement Class Members oftheir right to object or exclude themselves from the settlement and the process and deadlines for doing so.

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than tendays after filing the Settlement Agreement with the Court, notice will be issued to the appropriate government entities. 28 U.S.C § 1715(b). CAFA Notice was effectuated on May

26, 20201.  The Parties do not believe a second CAFA Notice is required as a result of the amendment to the Settlement Agreement, but are willing to do so if so ordered.  Because the proposed Notice Plan effectuates direct notice to all Settlement Class Members, establishes a publicly available Settlement Website, and fully apprises Settlement Class Members of their rights, it comports with the requirements of Due Process and Rule 23 and should be approved.

> *iv.    Plaintiffs' Counsel Should Be Appointed Class Counsel.*

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

As described in detail above, proposed Class Counsel have diligently investigated Plaintiffs' TCPA claims and the feasibility of class certification, have committed extensive efforts to negotiating and executing this Settlement and the related papers, and have devoted and continue to devote substantial time and resources to this litigation. Proposed Class Counsel have extensive experience with class action litigation, and/or have been appointed class counsel in many class actions, including TCPA cases in this District. *See* Ex. E [McFerrin Dec.]; Ex. F [Carroll Dec.]. The proposed Class Counsel have an in-depth knowledge of the laws applicable to the Settlement Class Members' claims and certification of the Settlement Class. *See* Ex. E [McFerrin Dec.]; Ex. F [Carroll Dec.]. Accordingly, the Court should appoint Plaintiffs' Counsel to serve as Class Counsel for the proposed Settlement Class pursuant to Rule 23(g).

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order

(1) granting preliminary approval of the proposed settlement[1]; (2) appointing Plaintiff Family Medicine Pharmacy, LLC as Class Representative; (3) appointing The McFerrin Law Firm and Johnstone Carroll, LLC as Class Counsel; (4) approving the form and content of the proposed Notice and ordering that it be effectuated; (5) scheduling a final approval hearing; and (6) providing such other and further relief as the Court deems just and reasonable.

Respectfully submitted this the 3rd day of August, 2021.

Respectfully submitted,

/s/ James McFerrin
One of the Attorneys for Plaintiff,
Family Medicine Pharmacy, LLC.

**OF COUNSEL:**
JAMES MCFERRIN
MCFERRIN LAW FIRM, LLC
3117 Manitou Lane
Birmingham, AL 35216
Telephone: 205-910-8597

/s/ Matt Carroll
One of the Attorneys for Plaintiff, Family
Medicine Pharmacy, LLC.

MATT CARROLL
JOHNSTONE CARROLL LLC
2204 Lakeshore Drive, Suite 303
Homewood, Alabama 35209
Telephone: 205-783-1578

---

[1] Plaintiffs respectfully submit an amended proposed order granting preliminary approval, attached hereto as Exhibit H [Amended Proposed Order for Preliminary Approval], for the Court's consideration.

25

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2021, a copy of the foregoing Amended Motion for

Preliminary Approval was served via CM/ECF Filing on counsel of record as follows:

> David S. Almeida
> Mark S. Eisen
> Suzanne Alton de Eraso
> Benesch Friedlander Coplan & Aronoff, LLP
> 71 S. Wacker Drive
> 16th Floor
> Chicago, IL 60606
> dalmeida@beneschlaw.com
> meisen@beneschlaw.com
> saltondeeraso@beneschlaw.com


> Wesley B. Gilchrist
> Brian Kappel
> Lightfoot, Franklin, & White, LLP
> 400 20th Street North
> Birmingham, AL 35203
> wgilchrist@lightfootlaw.com
> bkappel@lightfootlaw.com

*/s/ Matt Carroll*
One of the Attorneys for Plaintiff, Family
Pharmacy.

26