IN THE U.S. DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | | |
|---|---|---|
| FAMILY MEDICINE PHARMACY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) ) ) | CIVIL ACTION NUMBER: 1:20-CV-00534-KD-B |
| LIFESCAN, INC. Defendant. | ) ) ) ) | UNOPPOSED |

**PLAINTIFF'S MEMORANDUM BRIEF OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

COMES NOW, Plaintiff and Class Representative Family Medicine Pharmacy LLC, submits this memorandum in support of final approval of the parties' class action settlement. If approved, the settlement will resolve the claims of Plaintiffs and the Class and bring this class action litigation to a conclusion.

Under the proposed settlement, Lifescan has agreed to make $750,000.00 (the "Settlement Amount") available for settlement of approved claims and settlement costs. If this settlement is approved by the Court, the Settlement

Amount will also cover attorneys' fees to Counsel for Plaintiff and the Settlement Class (up to 25% of the Settlement Amount), plus Administration Costs.

The Settlement included a very robust notice plan, including two separate fax notices to the class list, a separate post card to all class members with reasonably ascertainable addresses (approximately 94% of the class), and a website. The post card, one of the two fax notices, and the website all included a claim form to make the claims process as easy and convenient as possible.

After this extensive notice, no objections were filed by any class member and no person or entity sought exclusion from the settlement. This response to the class notice confirms the favorableness of the settlement.

## BACKGROUND OF THIS LITIGATION

In 2009, the Junk Fax Prevention Act was signed into law and served to amend the Telephone Consumer Protection Act of 1991 (hereinafter the "Act" or "TCPA") to prohibit fax transmissions containing unsolicited advertisement. Specifically, the Act makes it unlawful for Defendant to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to another telephone facsimile machine in the United States without a statutory opt-out notice.

An unsolicited advertisement is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." *See* 47 U.S.C.

§227(a)(5). Furthermore, the Act provides a private right of action to enforce its provisions. *See* 47 U.S.C. §227(b)(3).

Plaintiff alleges that Defendant violated the Act, against Plaintiff and against putative class members, by utilizing "fax blasting" activities to generate sales leads for its products without the required opt-out notice. Plaintiff alleges that Defendant' "fax blasting" activities include the transmission of thousands of unsolicited facsimiles throughout the country, including to telephone facsimile machines located in the State of Alabama, to Plaintiff and the putative class members.

## FINAL CERTIFICATION IS WARRANTED

In order to certify a class action, the named Plaintiff must have standing and the putative class must satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3). *Karhu v. Vital Pharms, Inc.*, 621 Fed. Appx. 945 (11th Cir. 2015) (applying a heightened standard of the ascertainability doctrine, which Plaintiff can meet in this case, but which has drawn criticism from the 7th Circuit. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015)).

The Eleventh Circuit has unequivocally established that Family Medicine has Article III standing to bring its claims. *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245 (11th Cir. 2015). In *Palm Beach Golf*, the Eleventh Circuit determined that a business, such as Family Medicine, suffered a concrete injury sufficient for

Article III standing when it received an unsolicited fax in violation of the TCPA. *Id.*

A plaintiff satisfies Rule 23's implicit ascertainability requirement by proposing an administratively feasible method by which class members can be identified. *Karhu v. Vital Farms*, *supra*., at 950.

In the present matter, Defendant still possessed and produced to the Plaintiff and the Court-designated claims administrator facsimile records sufficient to identify the 3,150 class members who received its fax and now also comprise the Settlement Class. Those records allowed the settlement administrator to transmit a fax notice of the proposed settlement to the Class Members without any additional inquiry. That information also enabled the claims administrator to determine physical mailing addresses for approximately ninety-four percent (94%) of the settlement class, who were also sent a post-card notice of the settlement.

In sum, the Settlement Class in this matter meets the ascertainability requirement. *See Karhu*, 621 Fed. Appx. at 946 ("Identifying class members is administratively feasible when it is a 'manageable process that does not require much, if any, individual inquiry.'" [quoting *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014)].

## **Rule 23(a) Requirements are Satisfied**

Fed.R.Civ.P. Rule 23(a) requires (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed.R.Civ.P. 23(a). Rule 23(a)

states that the Plaintiff must show that "the class is so numerous that joinder of all parties is impracticable." There must be so many members in the proposed class that "joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1); *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). There is no bright-line or hard-and-fast rule as to how many putative class members are enough. In some jurisdictions, numerosity is presumed satisfied if there are forty (40) or more members. *See Kilgo*, at 878 (finding that a class of thirty-one (31) from a wide geographic area met the numerosity requirement); *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("[G]enerally less than twenty-one is inadequate, more than forty adequate with numbers between varying according to other factors." (citation and internal quotation marks omitted)); *see also* Rubinstein, *Newberg on Class Actions*, §3.12 (5th Ed.).

Here, the class members number in the thousands, so the numerosity requirement is met. Specifically, 4,333 of the objected-to faxes were issued to 3,150 unique fax numbers such that the class consists of in excess of 3,000 members.

When evaluating a class for typicality, the district court should "focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) (internal quotation marks omitted). The typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of

5

legal theories. *See Murray v. Auslander*, 244 F.3D 807, 811 (11th Cir. 2001).

Plaintiff has alleged an injury typical of the injuries of putative class members - specifically, that Defendant collectively and/or individually issued unsolicited facsimiles without the required opt-out notice. No other issue predominates this action. As such, Plaintiff's claim is typical of the claims of the members of the class. There are also no unique defenses which could be logically and/or reasonably asserted against the named Plaintiffs in this matter.

Under Rule 23(a), plaintiffs must demonstrate that "there are questions of law or fact common to the class" and "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(2)-(3). Both typicality and commonality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).

Commonality requires plaintiffs "to demonstrate that the class members 'have suffered the same injury.'" *Walmart Stores, Inc. v. Dukes*, 131 S.Ct 2541, 2551 (2011) (quoting *Falcon*, *supra.*, 457 U.S. at 156). "That common contention, moreover, must be of such a nature that it is capable of class-wide resolution —

which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Under the Supreme Court's decision in *Wal-Mart*, Rule 23(a)(2)'s commonality requirement demands more than the presentation of questions that are common to the class because 'any competently crafted class complaint literally raises common questions.'" "[T]he members of a proposed class do not establish that 'their claims can productively be litigated at once,' merely by alleging a violation of the same legal provision by the same defendant…" *Wal-Mart*, 131 S. Ct. at 2551. "Thus, the commonality test is no longer met when the proposed class merely establishes that there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Id*. (emphasis, citation, and internal quotation marks omitted). "Rather, Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution will resolve an issue that is central to the validity of each one of the class member's claims in one stroke." *Id.* (alteration, emphasis, citation, and internal quotation marks omitted.)

In the instant action, the legal and factual questions which are and could be advanced by Plaintiff and Defendant, and which are central to resolving issues which are central to each and every one of the class member's claims in one stroke, to-wit: (a) is the named Defendant subject to the TCPA; (b) has the Defendant violated the

TCPA by sending unsolicited facsimiles, without the required opt-out notice, to the Plaintiff and to putative class members; and (c) whether the class members, as a result of the same conduct by the same Defendant, are entitled to damages.

Directly in line with the United States Supreme Court's opinion in *Wal-Mart*, all of the claims in this matter contain a common contention and a common allegation of wrongful conduct – all imposed upon class members by the same Defendant. *See, e.g., Physician's Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2014 WL 7366255, * 5 (S.D. Fla. Dec. 24, 2014) ("Courts routinely certify TCPA class actions precisely because the requirement of an opt-out notice obviates the need to consider consent or established business relationships."); *C-Mart, Inc. v. Metropolitan Life Ins. Co.*, 299 F.R.D. 679 (S.D. Fla. 2014) ("Contrary to Defendant's contentions, no individual inquiry is necessary and their established relationship or voluntary consent defenses are unavailable where, as here, the opt-out requirement is alleged to have been violated."). All of the central and key legal and factual determinations which must be determined and adjudicated are common to all members of the class.

Finally, the proposed representative will and has fairly and adequately represent[ed] the class as required by Rule 23(a)(4). In order to satisfy this requirement, plaintiff must show that (1) the class representatives share common interests with the class members; and (2) plaintiff's counsel is qualified to vigorously

pursue the interests of the class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997).

Family Medicine's interests are such that it will assert and defend the interests of all of the class members with "forthrightness and vigor." *See Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Pla*n, 221 F.3d 1235, 1253 (11th Cir. 2000). Family Medicine receives numerous junk faxes, which interfere with its ability to process drug prescriptions it receives for its customer by fax in an orderly and prompt manner. It has a strong interest in stopping this activity. Moreover, Family Medicine is and has remained apprised of all aspects of the Litigation and continues to assist counsel in prosecuting this action. It has and will fairly and adequately represent and protect the interests of the Class. Plaintiff has also retained able counsel with extensive experience in class action litigation, including virtually identical TCPA claims. The interests of Plaintiff are coincident with and not antagonistic to the interests of the other Class members. As such, Plaintiff does and shall satisfy the fair and adequate representation criteria.

## And the 23(b)(3) Requirements are Satisfied

This matter is properly certified under Rule 23(b)(3) which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to

other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Common questions of law or fact applicable to the class as a whole must predominate over those issues subject to individualized proof. *See Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1588 (11th Cir. 1989).

All questions of fact in this matter involve the unsolicited transmittal of facsimiles to Plaintiff and the putative class without the required opt-out notice; questions of fact predominate over any individualized issues of proof; and the question of law is identical amongst the putative class and does not involve any individualized issues. Here, the predominant question is whether the Defendant sent facsimiles to the class members without consent or the statutorily required opt-out notice? If so, Defendant is liable to each member of the putative and ascertainable class. *See C-Mart*, 299 F.R.D. at 691 ("With consent and application of the [established business relationship] Safe Harbor being eliminated as criteria that serve to define (and defeat) the class, the singular issue of the absence of the correct opt-out language does not portend individual trails or individualized inquiries.").

In sum, this Honorable Court should enter its final Order certifying this action as a class action pursuant to Rule 23 on behalf of the settlement class.

### THE PROVISIONS OF THE SETTLEMENT

The Settlement provides the following: Lifescan has agreed to make Seven Hundred and Fifty Thousand U.S. dollars ($750,000.00) ("Settlement Amount")

available for settlement of Approved Claims and Settlement Costs. Each Settlement Class member who submits an approved claim will receive a check paying the recipient a maximum of two hundred and fifty dollars ($250.00) for each Lifescan facsimile it successfully received. Attorneys' fees to Counsel for Plaintiff and the Settlement Class, plus Administration Costs, will also be deducted from the Settlement Amount.

In sum, the Settlement has a value of $750,000.00. *See Swaney v. Regions*, Case No. 2:13-CV-00544-RDP, 2020 WL 3064945, *6 (N.D. Ala. June 9, 2020) (noting that common fund awards are properly calculated as a percentage of benefits made available to the class, "regardless of whether each class member redeems the benefits made available to the class members, or even whether unclaimed benefits revert to the defendant."); *see also Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (upholding an attorney fee award based on the entire settlement fund, even though a portion reverted to the defendant).

### THE SETTLEMENT SATISFIES THE APPLICABLE STANDARDS FOR SETTLEMENT APPROVAL

There is a well-established policy favoring class action settlement. "Before approving a settlement, the district court must find that it is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. Appx. 429, 434 (11th Cir. 2012) (quoting *Bennett v. Behring Cor*p., 737 F.2d 982, 986 (11th Cir. 1984)). The Court's "judgment is

informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id*.

Indeed, there is a "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement", *Bennet v. Behring*, 737 F. 2d 982, 986 (11th Cir.1984), and settlements of class actions are "highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *In re Equifax Inc. Customer Data Security Breach Litigation,* 999 F.3d 1247, 1257 (11th Cir. 2021) (quoting *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir. 1977)); *see also Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985) ("there is an overriding public interest in favor of settlement of class action suits"). The courts have recognized that "class action suits have a well-deserved reputation as being the most complex," and, therefore, compromise is particularly appropriate. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *In re Domestic Air Transportation Antitrust Litigation*, 148 F.R.D. 297, 312 (N.D. Ga. 1993) ("settlements of class actions are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits."); *In Re Gen Motors Corp. Pick-up Truck Fuel Tank Litig.*, 55 F. 3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions....").

Rule 23, of the Federal Rules of Civil procedure, requires a class settlement to be approved if it is lawful, fair, reasonable, adequate, and free from collusion. *See,*

*e.g., Maywalt v. Parker & Parsley Petroleum Co.*, 67 F. 3d 1072, 1079 (2d Cir. 1995). The authority to approve class settlement is committed to the sound discretion of the trial court. *In re Equifax*, 999 F.3d at 1273. If the Court considers the settlement within the range of reason and fairness, its decision is reviewable only for abuse and discretion. *In re U.S. Oil & Gas Litigation*, 967 F.2d 489, 493-4 (11th Cir. 1992).

Courts in the Eleventh Circuit evaluate six factors in determining whether to approve a class action settlement: (1) the existence of fraud or collusion among the parties in reaching the settlement; (2) the complexity, expense, and duration of the litigation; (3) the stage of proceedings at which the settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement. *In re Equifax*, 999 F.3d at 1273; *see also Bennett*, 737 F.2d at 986. "In considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties." *Nelson*, 484 F. Appx. at 434 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.'" *Id*. (quoting *Cotton*, 559 F.2d at 1330).

Consideration of these factors in the context of this litigation demonstrates

that this settlement is fair, reasonable, adequate, and in the best interests of the Class.

### a.     No fraud or collusion

There is no evidence of fraud or collusion among the parties. "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (citing *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 470 (S.D. Fla. 2002)); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement").

There is no dispute that this settlement is the product of extensive arm's length negotiations by experienced counsel, after appropriate factual investigation, legal analysis, and discovery. The settlement reached is the culmination of negotiations by experienced and informed counsel vigorously pursuing their respective clients' interests, and was achieved with the aid of mediator Bruce Rogers. Plaintiff's Counsel, who collectively have decades of experience in complex class actions work, negotiated the settlement with a view toward resolving the issues in dispute on the most favorable terms of the Class.

In sum, there is absolutely no evidence or hint of fraud or collusion among the parties and the settlement should be granted final approval.

### b. Complexity, expense, and duration of litigation

The continued litigation of all issues with respect to Defendant's liability would be difficult, long, and extraordinarily expensive for all parties. Represented by highly capable counsel, Defendant would surely litigate every possible issue with thoroughness and vigor. Even if plaintiffs were successful in the continued prosecution of the case through trial and likely appeals, that process would entail enormous additional effort and expense with no promise of a greater recovery. The settlement, instead, assures substantial benefits to the Class without the delay, expense and risks that would be unavoidable in further litigation.

### c. Stage of proceedings

This matter reached a final resolution after the filing of the complaint, after adequate informal discovery was obtained; after a list of fax recipients was provided, and other relevant documents were reviewed and deciphered. Importantly, the matter was resolved by way of mediation.

### d. Likelihood of success at trial

By settling, Defendant is tacitly waiving any defense that could be raised in litigation that a Settlement Class Member had an established business relationship, consented to receive the facsimiles at issue, or that the faxes in question are informational so as to be outside the scope of the TCPA. Whether the faxes in question could be deemed "informational" so as to be outside the coverage of the

TCPA is a legitimate issue, but the resolution of the matter eliminates this concern and allows the class members to partake of the settlement proceeds. Defendant issued facsimiles to independent and community pharmacies for which they had the facsimile numbers. As a benefit to Settlement Class Members, Defendant is agreeing to take class members at their word when they submit their claims, and Settlement Class Members recover money without having to contend with the Defendant's defenses.

### e.     Range of possible recovery

In assessing the settlement, the Court must also consider the range of possible damages that could be recovered at trial and then combine this possibility with the Plaintiffs' likelihood of prevailing at trial, and other relevant factors, to determine if the settlement falls at a point in the possible recovery range that is fair to the class. In determining whether the amount of the settlement is reasonable, "the Court is not confined to the mechanistic process of comparing the settlement to the estimated recovery times a multiplier derived from the likelihood of prevailing on the merits." *In Re Corrugated Container Antitrust Litigation*, 643 F. 2d 195, 217 (5th Cir. 1981).

Instead, the Court must recognize that, "[t]here is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion. . . . ." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).

As set forth above, Defendant have agreed to pay cash to the Settlement Class

sufficient to cover payments to class members of up to $250 per facsimile received and pay all costs of notice and claims administration to settle this action.

The purpose of the TCPA is to prevent the dissemination of unsolicited facsimiles. Although the TCPA provides for statutory damages of up to $500 for each violation, it is well-settled that a proposed settlement may be acceptable even if it amounts to only a small percentage of the potential recovery that might be available to class members at trial.  *See e.g.*, *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (noting that it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery).

In light of the statutory damages available to class members, the likely amount paid to the class members who chose to submit claims is reasonable.

      **f.**     **Opinion of competent counsel as to the reasonableness of the settlement**

The opinion of competent and experienced counsel as to the reasonableness of the settlement is an important consideration.  *In re Domestic Air Transportation Antitrust Litiga*tion, 148 F.R.D. at 312.   Here, Plaintiffs' counsel has considered,

17

among other things, the strengths and weaknesses of Plaintiffs' claims against Defendant, the uncertainties inherent in this complex litigation, and the substantial benefits provided by the settlement to the members of the Class. In light of the benefits available under the settlement and the costs, risks, and the inevitable delay involved in continued litigation, Plaintiffs' counsel believe that this settlement is in the best interests of the Class and is in all respects fair, reasonable and adequate.

### g. Degree of opposition to the settlement among affected parties

It is well settled that "the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *See, e.g.*, *Sala v. National R.R. Passenger Corp.*, 721 F.Supp. 80, 83 (E.D. Pa. 1989). A favorable reception by the Class constitutes "strong evidence" of the fairness of the settlement and supports judicial approval. *In re Paine Webber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D. N.Y. 1997), *aff'd*, 117 F.3d 721 (2nd Cir. 1997) (*citing Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2nd Cir. 1974)); *Nat'l Rural Telecom*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

The reaction of the Class can only be viewed as a positive endorsement of the settlement. The number of opt-out requests is normally taken into account in

assessing a settlement's fairness. **Here, no class member objected to the settlement or sought exclusion from the settlement**. In sum, there is no opposition to the proposed settlement from any member of the class.

## CONCLUSION

Wherefore, for the foregoing reasons, Plaintiffs and the Class respectfully request that the court grant final certification of the class and grant final approval to the settlement and enter an order of final judgment and dismissal in accordance with the Agreement of Compromise and Settlement.

**Respectfully submitted** this, the 22nd day of November, 2021.

/s/ *James H. McFerrin*
James H. McFerrin
ASB-2954-m72j

**OF COUNSEL:**
MCFERRIN LAW FIRM, LLC
3117 Manitou Lane
Birmingham, Alabama 35216
T: 205.9108597

/s/ *Matt Carroll*
Matthew F. Carroll
ASB-3109-e67c

**OF COUNSEL:**
JOHNSTONE CARROLL LLC
2204 Lakeshore Drive, Suite 303
Homewood, Alabama 35209
Telephone: 205-783-1578

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2021, a copy of the foregoing Plaintiff's Memorandum Brief of Points and Authorities in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class was served via CM/ECF Filing on counsel of record as follows:

David S. Almeida
Mark S. Eisen
Benesch Friedlander Coplan & Aronoff, LLP
71 S. Wacker Drive
16th Floor
Chicago, IL 60606
dalmeida@beneschlaw.com
meisen@beneschlaw.com
saltondeeraso@beneschlaw.com

Wesley B. Gilchrist
Brian Kappel
Lightfoot, Franklin, & White, LLP
400 20th Street North
Birmingham, AL 35203
wgilchrist@lightfootlaw.com
bkappel@lightfootlaw.com

/s/*Matt Carroll*
OF COUNSEL