**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **FAMILY MEDICINE** | ) | |
| **PHARMACY, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.: 1:20-cv-00534** |
| **v.** | ) | |
| | ) | |
| **LIFESCAN, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## FINAL JUDGMENT AND ORDER GRANTING FINAL APPROVAL TO CLASS ACTION SETTLEMENT

This action is before the Court on Plaintiff Family Medicine Pharmacy, LLC's ("Family Medicine") Memorandum Brief of Points and Authorities in Support of its Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class (doc. 35), the Declaration of KCC Class Action Services, LLC, the Settlement Administrator (doc. 35-1), Family Medicine's and Class Counsel's Motion and Incorporated Supporting Memorandum for Award of Attorney's Fees and Expenses and affidavits in support (doc. 32, doc. 32-1, doc. 32-2), and the Response filed by Defendant LifeScan, Inc. ("LifeScan") (doc. 34).

Upon consideration of the Motions, briefs, and supporting evidentiary submissions, the parties' respective positions as presented at the Final Approval Hearing held December 15, 2021, and for the reasons set forth herein, the Motion for Final Approval of Class Action Settlement and Certification of Settlement Class (doc. 35) is GRANTED, and the Motion for Award of Attorneys' Fees and Expenses (doc. 32) is GRANTED in part and DENIED in part. Accordingly, the Court enters this Final Judgment and Order Granting Final Approval to Class Action Settlement.

I. <u>Background</u>

On November 10, 2020, Family Medicine filed its class action complaint alleging that LifeScan violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 221, as amended by the Junk Fax Prevention Act of 2005 ("TCPA") (doc. 1).  Specifically, that LifeScan violated the TCPA by sending unsolicited facsimile advertisements to Family Medicine and the putative Class Members without an established business relationship and without the required opt-out notice.  At the Rule 16(b) Scheduling Conference, the parties notified the Court that they had reached a settlement and the Court directed the parties to file a motion for preliminary approval of class action settlement (doc. 16).

Family Medicine filed its Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement (doc. 19).  Family Medicine reported that the parties engaged in a full-day mediation with Bruce Rogers, a mediator with the firm of Bainbridge, Mims, Rogers, and Smith, LLC in Birmingham, Alabama but the session was unsuccessful.  However, negotiations continued, with follow-up conferences with the mediator, and a settlement was reached.

According to the terms of the Settlement Agreement and Release and the First Amendment to the Settlement Agreement (the "Settlement Agreement"), a Settlement Fund in the amount of $750,000.00 was created (doc. 26-1; doc. 26-2).  Each Settlement Class Member who submits an approved claim would receive a maximum of $250.00 for each facsimile received, subject to *pro rata* reduction, in the event sufficient funds are not available.  Also, LifeScan would cease sending the unsolicited facsimile advertisements. Class Counsel would petition the Court for an award of reasonable attorney fees and costs, not to exceed one-third (33%) of the Settlement Amount, to be paid from the Settlement Fund, and LifeScan will not

oppose a motion unless it exceeds that amount. The costs of notice to the Class Members and costs of administration of the settlement would be paid from the fund.

The Motion was heard on July 20, 2021, and for reasons set forth on the record, Family Medicine filed an Unopposed Amended Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement (doc. 26). On September 1, 2021, this Court granted preliminary approval to the proposed Class Action Settlement as set forth in the Stipulation and Settlement Agreement between Family Medicine, on behalf of itself and all members of the Settlement Class, and LifeScan (doc. 29). The Court also provisionally certified the Settlement Class for settlement purposes, as follows:

> Any and all individuals and entities, who or which, from November 10, 2016 to the date of preliminary approval, received one or more unsolicited advertisements via facsimile from defendant without the required opt out notice.

(Doc. 29, p. 3). The Court also approved the procedure for giving Class Notice to the Settlement Class Members and set a Final Approval Hearing on December 15, 2021 (Id.). For settlement purposes, the Court preliminarily appointed Family Medicine as Class Representative, and appointed James McFerrin and Matthew Carroll as Class Counsel.

Family Medicine and Class Counsel filed their Motion and Incorporated Supporting Memorandum for Award of Attorney's Fees and Expenses with affidavits in support (doc. 32, doc. 32-1, doc. 32-2) and LifeScan filed its Response stating it did not oppose the Motion (doc. 34). Family Medicine also filed its Memorandum Brief of Points and Authorities in Support of the Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class (doc. 35) and the Declaration of KCC Class Action Services, LLC, the Settlement Administrator (doc. 35-1). The deadline for objections lapsed on November 3, 2021. No objections were filed. No one sought exclusion from the settlement.

On December 15, 2021, the Court held a duly noticed Final Approval Hearing to consider:  (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable and adequate; (2) whether a judgment should be entered dismissing Family Medicine's Complaint on the merits and with prejudice in favor of LifeScan and against all persons or entities who are Settlement Class Members herein who have not requested exclusion from the Settlement Class; and (3) whether and in what amount to award Class Counsel as attorneys' fees and expenses.

II. Notice to the Class and the Claims Procedure

In the Order granting preliminary approval, the Court found that the forms of class notice proposed by the parties would provide reasonable, adequate, and sufficient notice to the Class Members and met the requirements of due process (doc. 29).  The Court also preliminarily found that the proposed Plan for distribution of the class notice was the best practicable under the circumstances and was reasonably calculated to provide notice to all Class Members who were identified by LifeScan (doc. 29).

Before the Final Approval Hearing, Family Medicine provided the Court with copies of the notice forms and the Declaration of the Senior Intake Specialist with the Settlement Administrator, KCC Class Action Services, LLC, which outlined the steps taken to comply with the plan for distribution of the class notice, as approved by the Court and as corrected (doc. 29, doc. 35-1, doc. 30).[1] The notice forms included a claim form and informed the Class Members as to the procedures and deadlines for submitting a claim, requesting exclusion, or objecting to the

---

[1] The parties notified the Court that the facsimile transmission of the notice form inadvertently failed to include the claim form.  The oversight was corrected by sending a second facsimile notice form with the claim form attached (doc. 30).

settlement, and advised the Class Members of the settlement website and telephone hotline (doc. 35-1).

Pursuant to the Court's Order, LifeScan provided the Settlement Administrator with a notice list of Class Members (doc. 29, doc. 35-1). Notice forms were faxed and mailed, as more fully explained in the Declaration, to Class Members. As a result of the notice procedures, 3,095 Class Members, or 98.3% of the 3,150 Class Members, received direct notice of the Settlement by fax and/or mail (doc. 35-1). As a result, 238 Class Members submitted claims. Of those, 215 claims, which accounted for 340 faxes, were found valid, and 23 claims, which accounted for 34 faxes, were denied (Id.) The objection period ended on November 3, 2021, and no objections were received (Id.) Also, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, notice was sent to the U.S. Attorney General and the Attorneys General for 23 states, plus the District of Columbia, along with a CD Rom containing documents related to this action (Id.).

Before final approval of a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the" proposed class settlement. Fed. R. Civ. P. 23(e)(1). The adequacy of class notice "is measured by reasonableness." Faught v. Am. Home Shield Corp., 668 F.3d 1233, 1239 (11th Cir. 2011). Also, "due process requires that the 'notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ' " Petersen v. Am. Gen. Life Ins. Co., 2019 WL 11093815, at *8 (M.D. Fla. Apr. 4, 2019) (citations omitted).

The Court has now reviewed the Declaration, the copies of the notice forms attached to the Declaration and heard from counsel at the Final Approval Hearing. The Court finds that the notice forms and the claims procedures as actually implemented satisfy due process, meet the

Rule 23(e)(1) requirements, and that the notice constitutes the best notice practicable under the circumstances as required by Fed. R. Civ. P. 23(c)(2)(B)[2] for class actions certified under Rule 23(b)(3).

III. Certification of the Class Action

As an initial consideration, when a motion for final approval of class action settlement is presented to the Court, it must evaluate whether certification of a settlement class is appropriate under Fed. R. Civ. P. 23(a) and 23(b). "Circuit precedent establishes that a district court must determine that a proposed class is 'adequately defined and clearly ascertainable' before it may consider whether the requirements of Rule 23(a) are satisfied." Cherry v. Dometic Corp., 986 F.3d 1296, 1302 (11th Cir. 2021) (quoting Little v. T–Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012)) (internal quotation marks omitted). "This rule follows from the text of Rule 23(a). Although no form of the word 'ascertainability' appears in the rule, the text includes 'what is implicit.'" Id. (citation omitted). "Class representatives bear the burden to establish that their proposed class is 'adequately defined and clearly ascertainable,' and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)." Id. (citation omitted). "A class is inadequately defined if it is defined through vague or subjective criteria." Id. (citation omitted). In other words, an adequate class definition must be defined through objective criteria. A "proposed class is ascertainable if

---

[2] "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

it is adequately defined such that its membership is capable of determination." <u>Cherry</u>, 986 F.3d at 1304. [3]

The Settlement Class is defined as follows:

Any and all individuals and entities, who or which, from November 10, 2016 to the date of preliminary approval, received one or more unsolicited advertisements via facsimile from defendant without the required opt out notice.

(Doc. 29, p. 3). The definition includes objective criteria and membership in the class is capable of determination. Specifically, LifeScan was able to provide the Settlement Administrator with a list of complete and partial fax numbers to which it had sent unsolicited advertisements via facsimile and the mailing addresses associated with those numbers, which after validation, were used for distribution of the class notice form (doc. 35-1). Therefore, the Court approves the Settlement Class definition and finds that the Settlement Class is adequately defined and clearly ascertainable.

As to the remaining requirements for certification of the Class, the Court adopts and incorporates its prior finding that Family Medicine had standing to bring this class action (doc. 29, p. 2). The Court also found that conditioned upon final certification, the factors in Fed. R. Civ. P. 23(a) and 23(b)(3) were met and preliminarily certified the Class (Id., p. 1-2). For final certification, the Court turns to the Rule 23(a) requirements,

Rule 23 sets forth a number of requirements that a class action must meet in order for a district court to certify the class. First, all four requirements in Rule 23(a) must be satisfied: (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the class representatives' claims or defenses must be "typical" of the

---

[3] In <u>Cherry</u>, the Eleventh Circuit held that "administrative feasibility is not a requirement for certification under Rule 23." Instead, if the "action involves a proposed Rule 23(b)(3) class, [the court] may consider administrative feasibility as part of the manageability criterion of Rule 23(b)(3)(D)." <u>Cherry</u>, 986 F.3d at 1305.

class's claims or defenses; and (4) the class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)[.]

In re Equifax Inc. Customer Data Sec. Breach Litig., 999 F.3d at 1274–75 (citing Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009). "These four requirements are often referred to as the numerosity, commonality, typicality, and adequacy requirements, respectively." Id.

To satisfy the numerosity requirement, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). At the Final Approval Hearing, the parties confirmed that facsimiles as defined herein were sent to approximately 3,150 persons or entities. Therefore, the proposed Settlement Class is sufficiently numerous to make joinder of all class members impracticable. Accordingly, the numerosity requirement is met. See Cox v. American Cast Iron Pipe Co., 784 F. 2d 1546, 1553 (11th Cir. 1986) (finding that a class of more than forty class members was adequate).

As to commonality, Rule 23(a)(2) provides that the representative parties of a class may sue on behalf of all Class Members where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, the action "must involve issues that are susceptible to class-wide proof." Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1355 (11th Cir. 2009) (citing Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001)). Also, the Plaintiff must "demonstrate that the class members 'have suffered the same injury.'" Walmart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). However, Rule 23(a)(2) "demands only that there be questions of law or fact common to the class. This part of the rule does not require that all the questions of law and fact raised by the dispute be common." Vega, 564 F.3d at 1268. "Commonality requires that there be at least one issue whose

resolution will affect all or a significant number of the putative class members." <u>Carriuolo v.</u> <u>Gen. Motors Co.</u>, 823 F.3d 977, 984 (11th Cir. 2016) (quoting <u>Williams</u>, 568 F.3d at 1355).

Here, Family Medicine asserts that LifeScan sent an unsolicited fax advertisement to all Class Members and that these advertisements did not provide the required notice to opt out from receiving future transmissions. Thus, the Class Members' claims involve a common allegation of wrongful conduct by LifeScan. <u>See Romano v. John Hancock Life Ins. Co.</u>, 2022 WL 138663, at *15 (S.D. Fla. Jan. 14, 2022) (the commonality "requirement is satisfied when the defendant has engaged in a standardized course of conduct that affects all class members") (citation omitted). Therefore, resolution of this action involves issues that are central to the validity of each one of the Class Member's claims, the resolution of which will affect the Class Members, and is susceptible to class wide proof. Also, the Class Members have the same injury. Under the TCPA, the Class Members were injured when they received a fax that was noncompliant with the TCPA, which made their fax machines "unavailable for legitimate business messages while processing ...the junk fax." <u>Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.</u>, 781 F.3d 1245, 1251-1252 (11th Cir. 2015) (citation omitted). Accordingly, the commonality requirement is met.

As to typicality, Rule 23(a)(3) provides that class representatives may sue on behalf of the class only if the "claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). Typicality is different from commonality because typicality focuses on the class representative's individual characteristics in comparison to those of the proposed class. <u>Piazza v. EBSCO Indus. Co.</u>, 273 F.3d 1341, 1346 (11th Cir. 2001). "Class members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus ... between the legal claims of the named class

representatives and those of individual class members to warrant class certification.' " <u>Ault v. Walt Disney World Co</u>., 692 F.3d 1212, 1216 (11th Cir. 2012) (citing <u>Prado-Steiman v. Bush</u>, 221 F.3d 1266, 1278-79 (11th Cir. 2000)). "This nexus exists 'if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" <u>Ault</u>, 692 F.3d at 1216. Typicality exists when the representative has "the same interest and suffer[s] the same injury as the class members." <u>Vega</u>, 564 F.3d at 1275.

Family Medicine's claims are typical of the Class because they are the same claims as those of the putative Class Members. All arose from the same pattern of faxing unsolicited advertisements without a sufficient opt out notice and are based on the same legal theory. Family Medicine's injury is the same as the Class Members – the unsolicited fax made the fax machine "unavailable for legitimate business messages while processing." <u>Palm Beach Golf Center</u>, 781 F.3d at 1251–1252 (citation omitted). Although the relief may vary in that each Class Member submitting a claim will receive up to $250.00 per facsimile, and some may have received more facsimiles than others, the claims and defenses are identical, and the action is pursued under the same legal theory – violation of the TCPA. Accordingly, the typicality requirement is met.

Rule 23(a)(4) provides that class representatives may sue on behalf of the class only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Eleventh Circuit has recognized "two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." <u>Valley Drug Co. v. Geneva Pharms., Inc.</u>, 350 F.3d 1181, 1189 (11th Cir. 2003) (quotations omitted); <u>Busby v. JRHBW Realty, Inc.</u>, 513 F.3d 1314, 1323 (11th Cir. 2008) (same). Moreover, the Eleventh Circuit has held that

"[t]he existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." <u>Valley Drug Co.</u>, 350 F. 3d at 1189.  A"fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." <u>Id</u>.

Family Medicine has demonstrated that it will protect the interest of the Class Members. Family Medicine filed this action, participated in the mediation, and appeared in this Court in its capacity as Class Representative. Family Medicine's claim and relief are identical to those of the Class Members and based upon the same predominate issues. There is no evidence to suggest a conflict of interest exists between Family Medicine and the Class Members.

"Under this section, the Court must also consider the competency and any conflicts that the class counsel may have." <u>Grames v. Sarasota Cty.</u>, 2021 WL 778897, at *6 (M.D. Fla. Mar. 1, 2021) (citing <u>Amchem Products, Inc., v. Windsor</u>, 521 U.S. 591, 627 n.20 (1997)).  "Counsel will be deemed adequate if they are shown to be qualified, adequately financed, and possess sufficient experience in the subject matter of the class action." <u>J.W. v. Birmingham Bd. of Educ.</u>, 2012 WL 3849032, at *9 (N.D. Ala. Aug. 31, 2012) (citation omitted).  Family Medicine's counsel have extensive experience in class action litigation with specific experience litigating TCPA class actions, and experience in complex business and consumer litigation (doc. 32-1, 32-2, Class Counsel's Declarations). No evidence indicates that Class Counsel are not adequately financed or that any conflicts of interest exist. Accordingly, the adequacy requirement is met.

"In addition to establishing the requirements of Rule 23(a), a plaintiff seeking class certification must also establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b)." <u>Little,</u> 691 F.3d at 1304.  In this case, Family Medicine pursues certification under the third alternative requirement, Rule 23(b)(3).  The Rule permits

class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule instructs that "matters pertinent to these findings include (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Id.

As previously discussed in determining commonality, the factual or legal questions applicable to the Class Members are identical – whether LifeScan sent unsolicited fax advertisements to the Class Members which did not contain the required opt out notice. With this narrow scope of injury, the narrow scope of relief provided in the TCPA,[4] and the costs of litigation necessary to proceed in an individual action, it is unlikely that the Class Members would have an interest in individually controlling the prosecution of separate actions. Fed. R. Civ. P. 23(b)(3)(A). The Court is not aware of any other litigation against LifeScan by a Class Member. Fed. R. Civ. P. 23(b)(3)(B).

As to the "desirability or undesirability of concentrating the litigation of the claims in the particular forum" Fed. R. Civ. P. 23(b)(3)(C), the parties have negotiated a Settlement

---

[4] "Congress created a private right of action for enforcement of violations of the statute in [47] section 227(b)(3) and provided statutory damages for a 'junk' fax recipient." Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1252 (11th Cir. 2015). The statutory damages are recovery "for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater". If defendant acted willfully or knowingly, an award of 3 times the amount may be available. 47 U.S.C. § 227(b)(3).

Agreement for the nationwide class-wide release of LifeScan. Thus, concentrating the litigation in this forum would avoid the potential for multiple actions raising the same claims, and achieve the goals of consistent adjudication of identical disputes and reducing litigation. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." In re Checking Account Overdraft Litig., 286 F.R.D. 645, 659 (S.D. Fla. 2012) (citation omitted).

As to the "likely difficulties in managing a class action" Fed. R. Civ. P. 23(b)(3)(D), the proposed settlement negates any potential class action management problems. In Amchem, the Supreme Court explained that "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620.

The Court finds that the common questions of law and fact predominate over individual questions of law or fact. The "common question, which can be decided classwide, is whether [LifeScan] sent the faxes as prohibited by the TCPA." Scoma Chiropractic, P.A. v. Dental Equities, LLC, 2021 WL 6105590, at *12 (M.D. Fla. Dec. 23, 2021) ("Additional common questions might include whether the faxes are 'advertisements,' whether they satisfy the TCPA's notice requirements, and whether they were sent using a 'telephone facsimile machine, computer, or other device.'") (citations omitted). Based on the number of Class Members and the limited relief available to each, a Class Action is superior to other available methods for fairly and efficiently adjudicating the controversy. Therefore, the predominance and superiority requirements of Rule 23(b)(3) have been met.

Accordingly, the Class Action is finally certified. <u>See</u> <u>Little</u>, 691 F.3d at 1304 ("Rule 23(b)(3) permits class certification if 'the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy.") (emphasis in original).

IV. <u>Approval of the Settlement Agreement</u>

Family Medicine asserts claims for violation of the TCPA. LifeScan denies any liability or wrongdoing. However, the parties entered into the Settlement Agreement to resolve this dispute, and to compromise and settle protracted, complicated, and expensive litigation, after consideration of the uncertainty and risks inherent in this litigation (doc. 26-1, Settlement Agreement and Release). LifeScan will provide a Settlement Fund of $750,000.00 from which the valid Class Members' claims will be paid, as well as the Settlement Administration costs, and Class Counsel's fees and expenses. Any unclaimed or unpaid funds revert to LifeScan. (Id.)

"Public policy strongly favors the pretrial settlement of class action lawsuits." <u>In re U.S. Oil & Gas Litig.</u>, 967 F.2d 489, 493 (11th Cir. 1992) (citing <u>Cotton v. Hinton</u>, 559 F.2d 1326, 1331 (5th Cir. 1977)).[5] However, a "class action may be settled only with court approval, which requires the court to find the settlement 'fair, reasonable, and adequate' based on a number of factors." <u>In re Equifax Inc.</u>, 999 F.3d at 1273. Rule 23(e)(2) states that "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;

---

[5] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. <u>Bonner v. City of Prichard,</u> 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3);[6] and

(D) the proposal treats class members equitably relative to each other.

Id. (citing Fed. R. Civ. P. 23(e)(2)).

The district court may consider additional factors, "called the Bennett factors." In re Equifax Inc., 999 F.3d at 1273 (citing Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984)). In Bennett, the Eleventh Circuit held that

> It is now abundantly clear, however, that in order to approve a settlement, the district court must find that it "is fair, adequate and reasonable and is not the product of collusion between the parties."

Bennett, 737 F.2d at 986 (quoting Cotton, 559 F.2d at 1330). The Eleventh Circuit identified certain factors to guide the determination of fairness, adequacy, and reasonableness. Specifically, the "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount

---

[6] Rule 23(e)(2)(D) requires the parties to file with the Court "a statement identifying any agreement made in connection with" a proposed Settlement Agreement. Fed. R. Civ. P. 23(e)(3). There does not appear to be any agreement which should be identified under this Rule.

of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." 999 F.3d at 1273 (internal quotation marks omitted).

A. Adequate representation of the class members, negotiation at arm's length, Rule 23(e)(2)(A) and (B), and absence of fraud or collusion

Family Medicine spent time working with Class Counsel throughout the litigation, participated in the mediation, and testified at court. Family Medicine engaged skilled and experienced class action counsel who brought this action to an early and favorable conclusion, thus eliminating delay in relief to the Class Members. Class Counsel has extensive experience in class action litigation and consumer litigation, and in this district, primarily in TCPA cases (doc. 32-2; 32-3). LifeScan was also represented by skilled and experienced counsel. The parties selected a mediator with skill and experience in TCPA litigation (doc. 32-2).  Although not initially successful, continuing negotiations resulted in a Settlement Agreement. See Pinon v. Daimler AG, 2021 WL 6285941 (N.D. Ga. 2021) (slip copy) (finding that the close participation of the mediator in multiple mediation sessions supported "the procedural fairness of the Settlement Agreement").  The Court finds that Family Medicine and Class Counsel have adequately represented the Settlement Class, that the Settlement Agreement is the result of arm's length settlement negotiations, and there is no evidence of fraud or collusion.  Accordingly, these factors weigh in favor of approval of the Settlement Agreement.

B. The Settlement Agreement treats Class Members equitably relative to each other, Rule 23(e)(2)(D), and the effectiveness of the proposed method of distributing relief to the Class Members, including the method of claims processing, Rule 23(e)(2)(C)(ii))

When the terms of the Settlement Agreement apply equally to all Class Members, the "method of distributing relief to the class' will effectively benefit" every Class Member and "treat them equitably relative to each other." Wave Lengths Hair Salons of Florida, Inc. v. CBL

& Associates, 2019 WL 13037028, *8 (M.D. Fla. Aug. 22, 2019) (citing Gumm v. Ford, 2019 WL 479506, at *6 (M.D. Ga. Jan. 17, 2019)). Here, each Settlement Class Member may receive up to $250.00 per facsimile and all Class Members participated in the same claims process (doc. 35-1). According to the terms of the Settlement Agreement, the Claim Settlement Checks will be mailed to each Class Member who submitted a timely and valid Claim Form, within 28 days after the Effective Date (the date on which the Order of Final Approval becomes Final) (doc. 26-1, p. 10, p. 33). Thus, the Class Members are treated equitably relative to each other and the method of claims processing and distribution provides adequate relief for the Class Members. Accordingly, these factors weigh in favor of approval of the Settlement Agreement.

C. The terms of any proposed award of attorney's fees, including timing of payment. Rule 23(e)(2)(C)(iii).

Class Counsel requests $187,500.00 or 25% of the $750,000.00 settlement fund for attorney's fees, plus expenses of $673.57. Neither LifeScan nor any Class Member objects to the request. According to the terms of the Settlement Agreement, Class Counsel will receive a percentage of the Settlement Fund and the Claims Administrator will pay Class Counsel within 28 days after the Effective Date (the date on which the Order of Final Approval becomes Final) (doc. 26-1, p. 33); the same schedule as the Class Members' payments. The timing of payment does not negatively affect the Class Members. Accordingly, this factor weighs in favor of approval of the Settlement Agreement.

D. The complexity, expense and duration of litigation; the stage of proceedings at which the settlement was achieved (the Fourth and Sixth Bennett Factors); and the costs, risks, and delay of trial and appeal. Fed. R. Civ. P. 23(e)(2)(C)(i).

This TCPA action is not complex. However, should this action proceed through litigation, years may pass before the Class Members would receive any benefit. The Class

Members would be subject to the increased costs and expenses and inherent risks of litigation as well as the consequent delay of trial and appeal. The action was of short duration, as opposed to the potential lengthy duration if the action proceeded through a full litigation process. The Class Action Settlement was obtained in the early stages of litigation, soon after the parties' report of planning meeting, and thus, avoided the delay, risks, and expenses of prolonged litigation. See Ferron v. Kraft Heinz Foods Co., 2021 WL 2940240, at *12 (S.D. Fla. July 13, 2021) ("In summary, continued litigation would have involved substantial delay and expense. Plaintiff would have been required to succeed at the class certification stage, face the prospect of interlocutory review of any Order granting class certification, a motion for summary judgment, a trial on the merits, and potentially a post-judgment appeal. The uncertainties and delays from this process would have been significant. Given the many risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement represents an abundantly fair compromise."). Accordingly, these factors weigh in favor of approval of the Settlement Agreement.

E. The likelihood of success at trial, the range of possible recovery, and the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable (the First, Second, and Third Bennett Factors)

In evaluating the likelihood of success at trial, the Court does not reach conclusions as to the issues of law and fact. Instead, this "factor weighs in favor of approval where there was 'no guarantee that the plaintiffs would prevail at trial on their [ ] claims." Swaney v. Regions Bank, 2020 WL 3064945. *3 (N.D. Ala. 2020) (slip copy). At the Final Approval Hearing, the parties addressed the relative merits of their claims and defenses and potential issues that could impede success at trial on the part of the Class Representative. The issues identified – that Family Medicine would have to prove that LifeScan did not have an established business relationship

with the fax recipients; that the faxes were sent for a commercial purpose, as contemplated under the TCPA, and not informational; and that the fax the recipients received was actually a fax as contemplated under the TCPA – substantially affect the likelihood of success at trial. Thus, rendering settlement a more practical and predictable choice to protect the Class Members.

The range of possible recovery was primarily limited by statute. The range is $0.00, if LifeScan should prevail at trial, $500.00 per facsimile, and up to $1,500.00 per facsimile if the Class prevails on all claims and the jury awards the maximum statutory treble damages for each unlawful fax, or alternatively, a claimant may recover for "actual monetary loss" from the violation. 47 U.S.C. § 227(b)(3). Specifically, the actual loss of time, paper, toner, and use of the facsimile machine while printing. Thus, relief in the form of $250.00 per facsimile falls at a point within the range of possible recovery sufficient to render the Class Settlement fair, adequate and reasonable. Accordingly, these factors weigh in favor of approval of the Settlement Agreement.

F. The substance and amount of opposition to the Settlement Agreement (the Fifth Bennett Factor)

As of the deadline, November 3, 2021, no Class Member objected to the Class Action Settlement or sought exclusion from the Class (doc. 35-1). Thus, this factor weighs in favor of approval of the Settlement Agreement.

G. Conclusion

For the reasons set forth herein, the Court approves the Settlement Agreement as fair, reasonable, and adequate and not the result of collusion. See Tweedie v. Waste Pro of Fla., Inc., 2021 WL 5843111, at *6 (M.D. Fla. Dec. 9, 2021) (slip copy) ("Essentially, the parties agreed to a claims-made settlement with full reversion to Defendants with a release of claims tailored solely to the claims addressed in this action. Such settlements are routinely considered fair,

adequate, and reasonable in similar cases.") (collecting cases). The Court authorizes the

implementation and performance of the terms and provisions of the Settlement Agreement.

V. <u>Appointment of Class Representative</u>

Previously, the Court preliminarily appointed Family Medicine as Class Representative

(doc. 29). Upon consideration of the foregoing, the Court finds that the Class Representative has

performed its duties in the best interests of the Class Members. The Court finally appoints

Family Medicine Pharmacy, LLC as Class Representative.

VI. <u>Appointment of Class Counsel</u>

Previously, the Court preliminarily appointed James McFerrin of McFerrin Law Firm,

LLC and Matthew Carroll of Johnstone Carroll LLC, as Class Counsel (doc. 29). When the

Court enters an order that finally "certifies a class action [it] must . . . appoint class counsel

under Rule 23(g) …" Fed. R. Civ. P. 23(c)(1)(B). After consideration of the factors identified in

Rule 23(g)(1)(A),[7] the Court finally appoints James McFerrin of McFerrin Law Firm, LLC and

Matthew Carroll of Johnstone Carroll LLC, as Class Counsel.

VII. <u>Family Medicine's and Class Counsel's Motion for Attorneys' Fees and Expenses</u>

As part of the Settlement Agreement, the parties agreed that Class Counsel would seek an

award of reasonable attorneys' fees, not to exceed one-third (33.3%) of the Settlement Fund

created by LifeScan (doc. 26-1, p. 19). Family Medicine and Class Counsel move the Court to

award attorneys' fees in the amount of $187,500.00, twenty-five percent (25%) of the Settlement

---

[7] "In appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action;(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;(iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(A)&(B).

Fund, and reimbursement of reasonable expenses in the amount of $673.57 (doc. 32). LifeScan does not oppose the motion (doc. 34).

"The Supreme Court has noted that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" Drazen v. GoDaddy.com, LLC, 2020 WL 8254868, at *12 (S.D. Ala. Dec. 23, 2020) (quoting In re Sunbeam Sec. Litig., 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001)) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S. Ct. 745 (1980)). In Camden I Condo Ass'n v. Dunkle, 946 F.2d 768 (11th Cir. 1991), the Eleventh Circuit held that "the percentage of the fund approach is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774. The Eleventh Circuit further explained that the factors in Johnson v. Georgia Highway Express, Inc., 488 F. 2d 714, 717-719 (5th Cir. 1974, *abrogated on other grounds* by Blanchard v. Bergeron, 489 U.S. 87, 109 (1989), "continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases." Camden I, 946 F.2d at 775. The Eleventh Circuit also identified additional factors. Specifically, "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." Camden I, 946 F.2d at 775. And found that the "majority of common fund fee awards fall between 20% to 30% of the fund.'" Camden I, 946 F.2d at 774; In re Home Depot, 931 F.3d 1065, 1076 (11th Cir. 2019) ("In this Circuit, courts typically award between 20-30%, known as the benchmark range."); Drazen, 2020 WL 8254868, at *12 (same).

21

District courts have "substantial discretion in determining the appropriate fee percentage awarded to counsel." Gevaerts v. TD Bank, N.A., 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015). "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." Camden I, 946 F.2d at 774. Class Counsel seeks an award of 25%, the median of the benchmark range. However, Upon application of the relevant factors set out in Camden I, as follows, the Court finds 20% is a reasonable percentage.

The Johnson factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

Camden I, 946 F.2d at 772 n.3. [8]

A. Time and labor required to prosecute the action and to reach a settlement.

This action was filed November 10, 2020 (doc. 1). In March 2021, before formal discovery, the parties notified the Court that the action had settled. Thus, Class Counsel obtained an early settlement of the action. Class Counsel reports that as of October 2021, approximately 300 hours had been spent on investigation, informal discovery, research, and prosecution of the

---

[8] Class Counsel conceded that the time limitations imposed by the client or the circumstances and the undesirability of the case, were inapplicable factors. Class Counsel acknowledges their long-standing relationship with the Class Representative and indicates that the nature and length of the professional relationship with the client is a neutral factor.

action, including the mediation, and additional time would be expended before the action is finally resolved. The hours appear to have been necessarily and reasonably expended (doc. 32-2, McFerrin Declaration). However, this is not the circumstance where time and labor were expended on contentious discovery, multiple negotiations, or overall extensive litigation, or where multiple cases involving the Class Member and LifeScan were litigated in multiple courts. See Drazen, 2020 WL 8254868, at *13 ("The time and labor expended were considerable due to the multiple courts where litigation occurred.").

B. <u>Novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly</u>

The Court acknowledges that a certain level of skill is necessary to represent Class Action plaintiffs and that Class Counsel have the requisite skill, experience, and ability (doc. 32-2, McFerrin Declaration; doc. 32-3, Carroll Declaration), as well as excellent reputations as Class Counsel. The Court also recognizes that the law governing TCPA actions in this circuit may be unsettled and evolving. <u>Drazen</u>, 2020 WL 8254868, at *13. However, the questions and issues involved in this action were neither novel nor difficult or complex,[9] and the action did not require more than the average skill of litigators in federal court.

C. <u>Preclusion of other employment due to this action, risk of bringing this action on a contingent fee basis, and the customary fee</u>

Class Counsel argue that prosecution of this action limited their ability to represent established hourly clients, which offer more predictable income, and their ability to accept other contingent fee cases. They also argue that by prosecuting this action on a contingent fee basis, they accepted a significant risk of non-recovery. Class Counsel also argue that their customary

---

[9] Since no objections were filed, there were no questions or issues to resolve as to objections, which typically increase the difficulty or complexity of an class action.

contingent fee in non-personal injury cases is 40%, as is their agreement with the Class Representative.

The Court acknowledges the inherent and well-established risks of representation of a Class Representative based on a contingency fee arrangement. <u>In re Checking Account Overdraft Litig.</u>, 830 F. Supp. 2d 1330, 1365 (S.D. Fla. 2001) (without contingency fee arrangements and the possibility of a percentage-based recovery, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks involved in recovering nothing."). And that accepting contingent fee cases may preclude other representation. However, in this circumstance, since 2015, Class Counsel has pursued fifteen TCPA actions in this Court, and therefore, knows well the risks and the effect of a contingent fee action upon their practice.

D. <u>The amount involved, the results obtained, and non-monetary benefits conferred upon the Class by the Settlement Agreement</u>

Class Counsel argue that the amount involved and the results obtained are the decisive factors and strongly support their request for an attorneys' fee of 25% of the Settlement Fund. Class Counsel obtained a settlement for $250.00 per facsimile and cessation of sending the facsimile notices. The TCPA provides for statutory damages of $500.00 per facsimile, and up to $1,500.00 per facsimile if the elements for statutory treble damages are met. 47 U.S.C. § 227(b)(3). Alternatively, a claimant may recover for "actual monetary loss" from the violation, i.e., the actual loss of time, paper, toner, and use of the facsimile machine while printing.

The monetary results obtained, $250.00 per facsimile, appears to be at the higher end of relief in a TCPA action. <u>See James v. JPMorgan Chase Bank, N.A.</u>, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) (claimants would "receive approximately $81, which equals or exceeds

the recovery in a typical TCPA class action") (collecting cases) with <u>Family Med. Pharm., LLC v. Trxade Grp., Inc.</u>, 2017 WL 1042079, at *6, *13 (S.D. Ala. Mar. 17, 2017) (class members "will recover money damages of approximately $302.79 each"); <u>Drazen</u>, 2020 WL 8254868, at *4 (noting that "roughly half of the Class Members who claimed awards opted for the $150 Voucher option" and assuming that "half of the claimants recognized the $150 Voucher as bestowing equal or greater value than the $35 cash award."). The non-monetary result obtained – cessation of sending the facsimile notices – is standard fair in TCPA Class Action Settlements.[10]

E. <u>Awards in similar cases</u>

In support of their request for an attorneys' fee equal to 25% of the Settlement Fund, Class Counsel argue that the trend in the Eleventh Circuit is to award one-third of the common fund as a reasonable attorneys' fee and point out their request is below this commonly awarded amount. As previously stated, the Eleventh Circuit has found that the "majority of common fund fee awards fall between 20% to 30% of the fund," which is the "benchmark range" of percentage fee awards. <u>Camden I</u>, 946 F.2d at 774-775; <u>Drazen</u>, 2020 WL 8254868, at *12. The Court acknowledges the many decisions awarding 30% or above as a reasonable attorneys' fee. <u>See Wavelengths</u>, 2019 WL 13037028, *14 (collecting cases awarding from 30% to 45% as a reasonable attorneys' fee). However, the facts and circumstances of this action support a finding that 20% is a reasonable attorneys' fee. <u>Camden I</u>, 946 F.2d at 774 ("There is no hard and fast

---

[10] "(3) Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State-- (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions." 47 U.S.C.A. § 227(b)(3).

rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case.")

### F. Expenses

As part of the Settlement Agreement, the parties agreed that Class Counsel would seek an award of reasonable expenses from the Settlement Fund created by LifeScan (doc. 26-1, p. 19). In that regard, Class Counsel seeks expenses in the amount of $673.57 comprised of the $400.00 filing fee and $273.57 for mileage and travel expenses. LifeScan did not object. Although Class Counsel did not document either request with copies of invoices or receipts, the Court is aware of its own filing fee. As to mileage and travel, these expenses are not included among the expenses recoverable by statute, 28 U.S.C. § 1920. However, the parties agreed to this reimbursement and the amount requested does not appear excessive or unreasonable for Class Counsel to attend the mediation and preliminary approval hearing.

### G. Conclusion

For the reasons set forth in this section, the Motion for Award of Attorneys' Fees and Expenses (doc. 32) is GRANTED in part and DENIED in part. Accordingly, Class Counsel are awarded a reasonable attorneys' fee of 20% of the Settlement Fund, or $150,000.00, and expenses in the amount of $673.57.

## VIII. Release

In class action settlements, the release "may include all claims that arise out of the same course of conduct alleged in the Complaint, known and unknown claims, or even claims over which the court lacked jurisdiction." Faught v. Am. Home Shield Corp., 2010 WL 10959223, at *15 (N.D. Ala. Apr. 27, 2010), *aff'd*, 668 F.3d 1233 (11th Cir. 2011) (citations omitted); see also

Thomas v. Blue Cross & Blue Shield Ass'n, 333 Fed. Appx. 414, 420 (11th Cir. 2009) ("Given a broad enough settlement agreement ... and provided that [a class member] had notice of it and an opportunity to opt out, it is perfectly acceptable for the [settling class] action to preclude his claims, even if they could not have been part of that action itself."). To that end, the Class Settlement Agreement contains a broadly worded, nationwide, and class-wide release provision which sets forth as follows:

> Upon the Effective Date[11] of this Agreement, the LifeScan Releasees shall be released and forever discharged by the Class Representative, the Settlement Class, and each Settlement Class Member from all Released Claims. The Settlement Class and each Settlement Class Member covenant and agree that they shall not hereafter seek to establish liability against any LifeScan Releasee based, in whole or in part, on any of the Released Claims. The Class Representative, the Settlement Class, and each Settlement Class Member expressly waive and relinquish any and all rights which they may have under Section 1542 of the California Civil Code or any similar statute of the United States or any state. Section 1542 reads as follows:
>
> > A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.
>
> The Class Representative, the Settlement Class, and each Settlement Class Member may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but the Class Representative, the Settlement Class, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Order of Final Approval shall have, nevertheless, fully, finally, and forever waived, settled and released any and all Released Claims, regardless of such subsequent discovery of additional or different facts.

---

[11] "The 'Effective Date' means the date on which the Order of Final Approval becomes Final." (doc. 26-1, p. 10). Since no objections were filed, "Final" means "the date five days after the Order of Final Approval is entered[.]" (doc. 26-1, p. 10).

Upon the Effective Date of this Agreement, the LifeScan Releasees shall be released and forever discharged by the Class Representative, the Settlement Class, and each Settlement Class Member for any and all Released Claims that they may have against any LifeScan Releasee.

This Agreement and the Releases herein do not affect the rights of Settlement Class Members who timely and properly submit a Request for Exclusion from the Settlement in accordance with the requirements in Section IV(D) of this Agreement.

(Doc. 26-1, p. 36-37).

The Court finds that the release provision "properly settles all matters between the class members and released parties" as a result of the Defendants' conduct as identified in the Class Settlement Agreement, that the release covers "claims based on the same factual predicate as the litigation being settled" and "is tailored to prevent the relitigation of settled questions at the core of this class action." Greco v. Ginn Development Co., LLC, 635 Fed. Appx. 628, 635–636 (11th Cir. 2015) (citing In re Corrugated Container Antitrust Litig., 643 F.2d 195, 221 (5th Cir.1981) (for the premise that the federal court "may release not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint")). Accordingly, the Court approves the Release provision as set forth in the Class Settlement Agreement.

IX. Conclusion

Upon consideration of the foregoing, it is ORDERED, ADJUDGED, and DECREED as follows:

1) The unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class (doc. 35) is GRANTED. The Court approves the Class Action Settlement as fair, reasonable, and adequate and not the result of collusion.

2) The unopposed Motion for Award of Attorneys' Fees and Expenses (docs. 32, 34) is GRANTED, in part and DENIED in part as detailed herein.

3) For purposes of the Settlement, the Court CERTIFIES this action as a Class Action pursuant to Fed. R. Civ. P. 23(b)(3).

4) The Court expressly adopt and incorporates the terms of the Settlement Agreement and authorizes and directs implementation and performance of all the terms and provision of the Settlement Agreement, as well as the terms and provisions hereof. The parties to the Settlement Agreement shall carry out their respective obligations thereunder.

5) In accordance with the Settlement Agreement, the Settlement Administrator shall begin distribution within (28) days after the Effective Date of this Order, which means the "date on which the Order of Final Approval becomes Final" (doc. 26-1, p. 10). Since no objections were filed, "Final" means "the date five days after the Order of Final Approval is entered[.]" (doc. 26-1, p. 10). The Settlement Administrator shall file on or before March 16, 2022, a final accounting as to the distribution to the Settlement Class Members, payment of the attorneys' fees and expenses, and payment to the Settlement Administrator.

6) This action is DISMISSED with prejudice.

7) The Court retains jurisdiction over this Class Action Settlement.

DONE and ORDERED at this 28th day of January 2022.

s/Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE